## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LOREN OWENS,

     Plaintiff,

v

ADROIT HEALTH GROUP, LLC d/b/a
STRATA HEALTH GROUP & ADROIT
INSURANCE SOLUTIONS LLC,
AMERICAN BUSINESS ASSOCIATION,
TYLER LONG, AND WESLEY CUNHA,
DOES 1-133,

     Defendants.

Case No. 1:24-cv-00547

Hon. Jane M. Beckering

| | |
|---|---|
| Joshua S. Goodrich (P83197)<br>LIGHTHOUSE LITIGATION PLLC<br>5208 W. Saginaw Hwy 81142<br>Lansing, Michigan 48908<br>269.312.7435<br>jsgoodrich@lighthouse-litigation.com<br><br>*Attorneys for Plaintiff* | Janet Ramsey (P63285)<br>WARNER NORCROSS + JUDD LLP<br>150 Ottawa Ave., NW, Ste. 1500<br>Grand Rapids, Michigan 49503<br>616.752.2736<br>jramsey@wnj.com<br><br>Jeffrey B. Pertnoy<br>AKERMAN<br>Three Brickell City Centre<br>98 Southeast Seventh Street<br>Miami, Florida 33131<br>305.982.5524<br>Jeffrey.pertnoy@akerman.com<br><br>Thomas B. Fullerton (P80690)<br>Akerman LLP<br>71 S. Wacker Dr., Ste. 4600<br>Chicago, IL 60606<br>312.634.5726<br>Thomas.Fullerton@akerman.com<br><br>*Attorneys for Defendants Tyler Long and Wesley Cunha* |

## DEFENDANTS TYLER LONG AND WESLEY CUNHA'S BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  SUMMARY OF ARGUMENT ........................................................................... 3

III. ARGUMENT ...................................................................................................... 6

IV.  CONCLUSION ................................................................................................. 32

77811969;1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval,*
532 U.S. 275 (2001)..................................................................15

*Arora v. Diversified Consultants, Inc.,*
No. 20 C 4113, 2021 WL 2399978 (N.D. Ill. June 11, 2021) ................................19

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)....................................................................7

*Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 WV/KY/OH,*
708 F.3d 737 (6th Cir. 2013) ...............................................15

*Bailey v. Domino's Pizza, LLC,*
867 F. Supp. 2d 835 (E.D. La. 2012) ...................................16

*Barry v. Ally Fin., Inc.,*
No. 20-12378, 2021 WL 2936636 (E.D. Mich. July 13, 2021)................................32

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)..............................................................7, 19

*Bennett v. MIS Corp.,*
607 F.3d 1076,1100 (6th Cir. 2010) .....................................22

*Benzion v. Vivint, Inc.,*
No. 12-61826-CIV, 2014 WL 11531368 (S.D. Fla. Jan. 17, 2014)........................14

*Braver v. NorthStar Alarm Servs., LLC,*
No. CIV-17-0383-F, 2019 WL 3208651 (W.D. Okla. July 16, 2019), *amended on denial of reconsideration,* No. CIV-17-0383-F, 2019 WL 5722207 (W.D. Okla. Nov. 5, 2019)..........................................................16

*Buja v. Novation Cap., LLC,*
No. 15-81002-CIV, 2017 WL 10398957 (S.D. Fla. Mar. 31, 2017) .......................22

*Burdge v. Ass'n Health Care Mgmt., Inc.,*
No. 1:10-cv-00100, 2011 WL 379159 (S.D. Ohio Feb. 2, 2011) ...........................24

*Charvat v. GVN Michigan, Inc.,*
561 F.3d 623 (6th Cir. 2009) ...............................................13

*City of Los Angeles v. Lyons,*
461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)......................................30

iii

*CNN v. SEB*,
   345 Mich. App. 151, 4 N.W.3d 759 (2023) ...................................................................25

*Coffey v. Foamex L.P.*,
   2 F.3d 157 (6th Cir. 1993) ............................................................................................22

*Constantino v. Michigan Dep't of State Police*,
   707 F. Supp. 2d 724 (W.D. Mich. 2010), *amended*, No. 1:09-CV-506, 2010
   WL 4115385 (W.D. Mich. Oct. 19, 2010) ...................................................................21

*Cooper-Keel v. Keel-Worrell*,
   No. 1:22-CV-1236, 2024 WL 2178302 (W.D. Mich. May 15, 2024) ........................26, 27

*Courser v. Michigan House of Representatives*,
   831 F. App'x 161 (6th Cir. 2020) .................................................................................25

*Crehan v. Countrywide Bank, FSB*,
   No. 1:11 CV 613, 2012 WL 4341049 (W.D. Mich. Feb. 15, 2012) .............................19

*Currier v. PDL Recovery Grp., LLC*,
   No. 14-12179, 2017 WL 712887 (E.D. Mich. Feb. 23, 2017)......................................21

*Dahdah v. Rocket Mortg., LLC*,
   No. 22-11863, 2023 WL 5941730 (E.D. Mich. Sept. 12, 2023)...................................18

*Dixon v. Ford Motor Co.*,
   No. 2:16-CV-14124, 2017 WL 6988798 (E.D. Mich. Dec. 15, 2017) .........................25

*Dobronski v. Selectquote Ins. Servs.*,
   462 F. Supp. 3d 784 (E.D. Mich. 2020).......................................................................17

*Dobronski v. SunPath Ltd.*,
   No. 19-13094, 2020 WL 8840311 (E.D. Mich. July 27, 2020)....................................17

*Dobronski v. Tobias & Assocs.*,
   No. 5:23-CV-10331, 2023 WL 7005844 (E.D. Mich. Sept. 25, 2023), *report
   and recommendation adopted in part sub nom. Dobronski v. Tobias &
   Assocs., Inc.*, No. 23-10331, 2024 WL 1174553 (E.D. Mich. Mar. 18, 2024) .......17

*Dobronski v. Total Ins. Brokers*,
   LLC, No. 21-10035, 2021 WL 4452218 (E.D. Mich. Sept. 29, 2021) .........................17

*Downing v. Life Time Fitness*,
   483 F. App'x 12 (6th Cir. 2012), *as amended* (May 18, 2012)................................27

*Facebook, Inc. v. Duguid*,
   592 U.S. 395 (2021).....................................................................................................32

iv

*Farris v. Standard Fire Ins. Co.*,
   280 F. App'x 486 (6th Cir. 2008) ........................................................................ 21

*Fedorova v. Foley*,
   No. 1:22-CV-991, 2023 WL 4543034 (W.D. Mich. July 7, 2023) ................... 8, 9

*Fejedelem v. Kasco*,
   269 Mich. App. 499, 711 N.W.2d 436 (2006) .................................................... 23

*Fluker v. Ally Fin. Inc.*,
   No. 22-CV-12536, 2023 WL 8881154 (E.D. Mich. Dec. 21, 2023) .................... 32

*Fontes v. Time Warner Cable Inc.*,
   No. CV14-2060-CAS(CWx), 2015 WL 9272790 (C.D. Cal. Dec. 17, 2015) .......... 3

*Gamrat v. McBroom*,
   822 F. App'x 331 (6th Cir. 2020) .................................................................. 24, 25

*Hand v. Beach Ent. KC, LLC*,
   456 F. Supp. 3d 1099 (W.D. Mo. 2020) ............................................................. 14

*Hartford Fire Ins. Co. v. CMC Constr. Co.*,
   3:06-cv-11, 2012 WL 12965761 (E.D. Tenn. Jan. 30, 2012) ............................. 26

*Hayford v. Hayford*,
   279 Mich. App. 324, 760 N.W.2d 503 (2008) .................................................... 24

*Hi-Way MotorCo. V. Int'l Harvester Co.*,
   398 Mich. 330, 247 N.W.2d 813 (1976) ............................................................. 22

*Higgins v. Lawrence*,
   107 Mich. App. 178, 309 N.W.2d 194 (1981) .................................................... 22

*Hinesley v. Ensurem II, LLC*,
   No. 23-cv-5286-TKW-HTC, ECF No. 51 (N.D. Fla. May 21, 2024) ................... 31

*Hurley v. Wayne Cty. Bd. of Educ.*,
   No. 16-cv-9949, 2017 WL 2454325 (S.D. W. Va. June 6, 2017) ........................ 15

*Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare*
   *Fund v. Omnicare, Inc.*,
   583 F.3d 935 (6th Cir. 2009) ............................................................................. 22

*Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*,
   927 F.3d 396 (6th Cir. 2019) ............................................................................. 30

*Keating v. Peterson's Nelnet, LLC*,
   615 F. App'x 365 (6th Cir. 2015) ......................................................................... 9

v

*Lucas v. Telemarketer Calling from (407) 476-5680*,
    No. 18-3633, 2019 WL 3021233 (6th Cir. May 29, 2019) .................................... 9, 10, 11, 12

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................................ 13

*Lyman v. Excel Impact, LLC*,
    Case No. 1:23-cv-23767-BB, ECF No. 38 (S.D. Fla, Feb. 28, 2024) ..................................... 30

*Mickam v. Joseph Louis Palace Tr.*,
    849 F. Supp. 516 (E.D. Mich. 1994) ...................................................................................... 23

*Morris v. UnitedHealthcare Ins. Co.*,
    No. 4:15-cv-00638-ALM-CAN, 2016 WL 7115973 (E.D. Tex. Nov. 9, 2016) ....................... 3

*Nastal v. Henderson & Assocs. Investigations, Inc.*,
    471 Mich. 712, 691 N.W.2d 1 (2005) .................................................................................... 24

*Old Republic Nat. Title Ins. Co. v. Escrow Title Servs., Inc.*,
    No. 1:08-CV-796, 2010 WL 2650435 (W.D. Mich. June 30, 2010) ..................................... 21

*Ouwinga v. Benistar 419 Plan Servs.*,
    694 F.3d 783 (6th Cir. 2012) ................................................................................................ 23

*PNC Bank, Nat'l Ass'n v. Goyette Mech. Co., Inc.*,
    140 F. Supp. 3d 623 (E.D. Mich. 2015) ................................................................................ 19

*Pobursky v. Gee*,
    249 Mich. App. 44 (2001) ..................................................................................................... 23

*Qualite Sports Lighting, LLC v. Ortega*,
    No. 1:17-CV-607, 2019 WL 7582823 (W.D. Mich. Sept. 10, 2019) ..................................... 20

*Rahaman v. Spine Specialists of Michigan*,
    No. 22-12349, 2024 WL 3795995 (E.D. Mich. Aug. 13, 2024) ..................................... 25, 27

*Rahaman v. State Farm Mut. Ins. Co.*,
    No. 22-10635, 2023 WL 5439212 (E.D. Mich. Aug. 23, 2023) ..................................... 24, 27

*Rogers v. Postmates, Inc.*,
    No. 19-CV-05619-TSH, 2020 WL 3869191 (N.D. Cal. July 9, 2020) ..................................... 9

*Savel v. MetroHealth Sys.*,
    96 F.4th 932 (6th Cir. 2024) .................................................................................................. 12

*Schaevitz v. Braman Hyundai, Inc.*,
    437 F. Supp. 3d 1237 (S.D. Fla. 2019) .................................................................................. 30

*Siefert v. Hamilton Cnty.*,
   951 F.3d 753 (6th Cir. 2020) ............................................................................20

*Simmons v. Charter Commc'ns, Inc.*,
   No. 3:15-CV-317 (SRU), 2016 WL 1257815 (D. Conn. Mar. 30, 2016)...............................14

*Smith v. Miorelli*,
   No. 22-10663, 2024 WL 770360 (11th Cir. Feb. 26, 2024) ...................................31

*Smith v. Truman Rd. Dev., LLC*,
   No. 4:18-CV-00670-NKL, 2020 WL 2044730 (W.D. Mo. Apr. 28, 2020) ...........................14

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)...........................................................................12

*United States v. Burns*,
   109 F. App'x 52 (6th Cir. 2004)..............................................................26

*Wilson v. PL Phase One Operations L.P.*,
   422 F. Supp. 3d 971 (D. Md. 2019)............................................................16

*Winters v. Grand Caribbean Cruises Inc.*,
   No. CV-20-00168-PHX-DWL, 2021 WL 511217 (D. Ariz. Feb. 11, 2021)...........................9

*Zononi v CHW Group, Inc.*,
   22-CV-14358, 2023 WL 2667941 (S.D. Fla Mar. 7, 2023).......................................30

**Statutes**

47 U.S.C. ....................................................................................16

47 U.S.C. § 227(c) ...........................................................................15

47 U.S.C. § 227(c)(5) ........................................................................13

47 U.S.C. § 227(c)(5)(A).................................................................13, 15

47 U.S.C. § 227(d) .......................................................................15, 16

Florida Telephone Solicitation Act, Fla. Stat. § 501.059................................2, 6, 28, 29

M.C.L. §§ 445.111a(5), 445.111b(1) and 484.125(2)(a)..........................................20

M.C.L. § 484.125(2)(b)......................................................................5, 20

M.C.L. § 600.2954...........................................................................5, 23

M.C.L. § 600.2954(1)..........................................................................23

77811969;1

M.C.L. § 750.411h ...........................................................................................................23

M.C.L. § 750.411h(1)(a) .................................................................................................24

M.C.L. § 750.411h(1)(b) .................................................................................................24

M.C.L. § 750.411h(1)(c) ............................................................................................24, 26

M.C.L. § 750.411h(1)(d) .................................................................................................24

M.C.L. § 750.411i ...........................................................................................................23

Telephone Consumer Protection Act, 47 U.S.C. § 227 ....................................... *passim*

**Other Authorities**

47 C.F.R. § 64.1200(a)(7) ......................................................................................4, 18, 19

47 C.F.R. § 64.1200(c)(2) ...............................................................................................13

47 C.F.R. § 64.1200(d) ....................................................................................... *passim*

47 C.F.R. § 64.1200(d)(3) ...........................................................................................4, 13

47 C.F.R. § 64.1200(d)(4) ..................................................................................4, 15, 17

47 C.F.R. § 64.1601(e) ..............................................................................................4, 17

Fed. R. Civ. P. 8 .................................................................................................. *passim*

Fed. R. Civ. P. 9(b) .........................................................................................................22

Fed. R. Civ. P. 12 .............................................................................................................1

Fed. R. Civ. P. 12(b)(6) ...................................................................................................75

Fed. R. Civ. P. 12(f) ....................................................................................................6, 31

U.S. Const. art. III, § 2 ....................................................................................................12

77811969;1

Defendants Tyler Long ("**Long**") and Wesley Cunha ("**Cunha**"), pursuant to Rule 12, Fed. R. Civ. P., move to dismiss the amended Complaint and Request for Injunction (ECF No. 24; "**Amended Complaint**")[1] filed by Plaintiff Loren Owens ("**Plaintiff**"), and state as follows:

## I.    <u>INTRODUCTION</u>

Plaintiff's Amended Complaint is not markedly different from the initial complaint (ECF No. 1). Plaintiff did not cure any of the previously outlined deficiencies. Plaintiff merely replaces what were general references to "Defendant," singularly, throughout the initial pleading, with generic and boilerplate references to "Defendant Adroit, Defendant American Business Association, Defendant Long, and Defendant Cunha" (i.e., all four defendants) throughout the Amended Complaint. The Amended Complaint remains an improper "group pleading," as Plaintiff still lumps all Defendants together in every cause of action, and even after amendment, still provides no clarity on who allegedly did what.

Like its predecessor, the Amended Complaint is a jumbled amalgamation of duplicative allegations and claims. Plaintiff takes the "kitchen sink" approach. Instead of cleaning up the allegations, Plaintiff exacerbated the deficiencies and added two new causes of action (Counts 15 and 16), which are also deficient. The rambling allegations, while an attempt to cure prior pleading deficiencies, fall far short of stating valid claims against Long and Cunha as a matter of law based on Plaintiff's admissions, requiring dismissal, this time with prejudice.

This case is based entirely on Plaintiff's alleged receipt of phone calls from the defendants. The Amended Complaint still does not say which defendant was responsible for the calls. Plaintiff brings claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("**TCPA**"),

---

[1]    The Amended Complaint is entitled "Complaint and request for Injunctive Relief," despite that it is Plaintiff's first amended complaint. *See also* ECF No. 25, at n. 1 (noting same).

various Michigan state statutes, the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("**FTSA**"), and several common law claims.

Defendants Long and Cunha are individuals residing in Florida. Am. Compl., ¶¶ 5-6 (PageID.178). Long and Cunha are not persons or entities on whose behalf goods, products or services were allegedly being offered. The Amended Complaint is clear that "[e]ach call was initiated with the intent and purpose of marketing Defendant Adroit and Defendant American Business Association Products." Am. Compl. ¶ 218 (PageID.211); ¶ 73 (PageID.190) ("Defendants Adroit and Defendant American Business Association" have people "try[ing] to sell ***their*** products and services."). While Plaintiff tries to plead that Long and Cunha were beneficiaries of the calls, the Amended Complaint unambiguously paints a picture of two individuals who did not violate any of the statutes or laws sued under. Long and Cunha are not alleged to have made a single call, and certainly no calls were made for their benefit or on their behalf. But rather than acknowledge that they are improperly caught up in this case, Plaintiff disingenuously tries to keep them in it with creative pleading (though no plausible claims are pled).

Importantly, even after amendment, Plaintiff does not allege that either Long or Cunha themselves made or initiated a single call to her. Plaintiff's new vicarious liability allegations still fall short of adequately alleging that they are vicariously liable. In fact, Plaintiff altogether misunderstands how vicarious liability operates. Plaintiff not only improperly lumps the alleged conduct of all defendants into every cause of action, but also into nearly every allegation in the Amended Complaint, all without explaining who specifically did what. This is important, since liability under the TCPA and the regulations and statutes sued under must be based on either direct or vicarious liability, and there are pleading standards (not met here) associated with same.

The shotgun Amended Complaint is rife with contradictions, pleading deficiencies and impertinent allegations. The allegations that relate to Long and Cunha are insufficient to state claims against them. Plaintiff admits that Long made no calls. She alleges that a call was merely "transferred to" him. Am. Compl., ¶¶ 167-68 (PageID.204). For his part, Cunha is not alleged to be involved in a single call, at all. Not as a caller; not as ever having spoken to Plaintiff; and not as someone on whose behalf the calls were made (aside from boilerplate and conclusory allegations). Rather, Cunha's involvement is limited to "allowing Defendant Long to use resources from his license in the state of Michigan to sell insurance." Am. Compl., ¶ 183 (PageID.206). Even if true, that does not give rise to liability under any claim asserted by Plaintiff as a matter of law. Finally, the Amended Complaint repeatedly refers to allegedly unknown "Doe Defendants" who allegedly made the calls, which is an express admission that Long and Cunha *did not*.

Long and Cunha are unfortunately caught in the middle, and their alleged conduct does not give rise to any claims.

The TCPA was enacted as a shield for consumers, but has become a sword for litigants. The TCPA "has strayed far from its original purpose." *Fontes v. Time Warner Cable Inc.*, No. CV14-2060-CAS(CWx), 2015 WL 9272790, at *3 (C.D. Cal. Dec. 17, 2015) (citations omitted); *Morris v. UnitedHealthcare Ins. Co.*, No. 4:15-cv-00638-ALM-CAN, 2016 WL 7115973, at *6 (E.D. Tex. Nov. 9, 2016) ("TCPA suits have… been abused"). This case fits that mold. The Amended Complaint should be dismissed in its entirety as to Long and Cunha for these reasons:

## II.    <u>SUMMARY OF ARGUMENT</u>

<u>First</u>, the Amended Complaint is an improper "group pleading," as Plaintiff lumps all Defendants together in every cause of action (and in fact, in nearly every allegation), providing no clarity on who allegedly did what. Such pleading is improper in this District.

77811969;1

<u>Second</u>, Plaintiff does not plead *any* viable claims against Long or Cunha. There is no allegation that Long or Cunha themselves made any phone calls. There are no specific allegations that they are vicariously liable for the calls (*i.e.*, that they controlled the calls, that an agency relationship existed that flowed in their direction, or that the calls were made on their behalf or for their benefit). TCPA claims must be brought under a direct or vicarious liability theory. Plaintiff pleads neither.

<u>Third</u>, Plaintiff facially lacks standing to assert claims against Long and Cunha, as there is no injury pled that is "fairly traceable" to their conduct. Plaintiff does not plead that they made any calls to Plaintiff, and does not plead vicarious liability. Without any conduct pled traceable to Long or Cunha, Plaintiff lacks standing.

<u>Fourth</u>, Count I (TCPA Do-Not-Call Violations) fails. Such a claim requires "more than one" call by a defendant. Plaintiff alleges <u>*no calls*</u> made by Long or Cunha, and at best, only alleges their mere *involvement* in one call. This is fatal to the claim.

<u>Fifth</u>, Count III (Violation of "Internal Do Not Call" Regulations, 47 C.F.R. § 64.1200(d)(3)) fails because the operative question in addressing such a claim is whether the defendant had policies and procedures in place at the time of the call to prevent a call to someone on the "internal do not call" list. Plaintiff's Amended Complaint contains no such allegations.

<u>Sixth</u>, Plaintiff's claims under 47 C.F.R. § 64.1200(d)(4) (Count IV) and 47 C.F.R. § 64.1601(e) (Count V) fail because there is no private cause of action under either regulation, and even if there was, there is no conduct tying Long or Cunha to a violation of either regulation on the facts pled.

<u>Seventh</u>, Count VII, which asserts a violation of 47 C.F.R. § 64.1200(a)(7) fails as, again, no conduct of Long or Cunha is alleged to have violated the regulation, and because she has not

(and cannot) plead facts showing the abandonment percentage of calls allegedly made by Long or Cunha (of which, none are pled), as would be required to state a claim.

Eighth, Count XI, which asserts that Long and Cunha violated M.C.L. § 484.125(2)(b), fails because the statute only applies to "*intra*state commercial advertising" and Plaintiff admits that Long and Cunha are in Florida. There are no allegations that any calls attributable to Long or Cunha came from within Michigan to Plaintiff in Michigan.

Ninth, Plaintiff's civil conspiracy claim (Count VIII) fails to state a claim because she cannot – and will not be able to – allege that Long or Cunha knew of any agreement to violate the TCPA (one never existed). Knowledge and intent are elements of civil conspiracy, which Plaintiff fails to plead. Plaintiff's claim is also improper as it is bereft of factual support, and contains only a formulaic recitation of the elements of such a claim. Plaintiff also fails to plead actual damages.

Tenth, Counts XII (Intrusion Upon Seclusion), XIII (Intentional Fraud/ Misrepresentation), and XIV (Negligent Misrepresentation) are duplicative of the TCPA and the Michigan statutory claims, as they are based on the *identical* facts; they are simply dressed up as tort claims. Courts routinely dismiss such duplicative claims, and this Court should too.

Eleventh, Counts XIII (Intentional Fraud/Misrepresentation) and XIV (Negligent Misrepresentation) fail as a matter of law because Plaintiff has failed to plead sufficient facts to support the required elements of each claim.

Twelfth, newly pled Count XV (Civil Stalking under M.C.L. § 600.2954) fails for a number of reasons: (1) there are not "two or more" instances of alleged harassment attributable to Long or Cunha (indeed, there is not even one); (2) the conduct attributable to Long and Cunha is not harassment as a matter of law; and (3) based on Plaintiff's admissions, there is no plausible way that Long or Cunha could have made Plaintiff feel "terrorized" as a matter of law.

Thirteenth, newly pled Count XVI asserts three different violations of the FTSA. Each theory is defective. Plaintiff's claim under § 501.059(2) fails because neither Long or Cunha are alleged to have made any calls themselves, thus, they could not have violated that provision (which would require the caller to identify themselves by name). Also, Plaintiff admits that Long, during the one conversation he was involved in, *did* identify himself (Am. Compl. ¶ 168, PageID.204). The FTSA claim based on § 501.059(4) (which would prohibit the making of calls to numbers on the Florida-specific do not call list) fails because Plaintiff does not allege she was on the Florida specific list. And the claim based on § 501.059(5) fails because, as Plaintiff alleges, Long was merely transferred a single call, and Cunha not involved in any calls, so they were never informed of Plaintiff's "do not call" request, if it was indeed ever made.  In any event, all of these claims are duplicative of other claims.

Fourteenth, Plaintiff's request for injunctive relief should be dismissed or stricken because Plaintiff lacks standing. The Amended Complaint refers to alleged past conduct (again, not even tied to Long or Cunha) over a two-day period in March 2024. Under Supreme Court precedent, there must be a threat of future harm or repeated injury, which does not exist here. Plaintiff's amendment (alleging that she is still getting calls) only strengthens this argument, as Plaintiff admits that the calls she is "still getting" are from "unknown parties," *not* Long or Cunha. She cannot plausibly allege Long or Cunha are making calls to her.

Finally, the Court should strike certain portions of the Amended Complaint under Rule 12(f) as the allegations are scandalous, impertinent and immaterial to the issues in this case.

## III.   **ARGUMENT**

### A.   **Standard for Motions to Dismiss**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).  To satisfy this Rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*

The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678-79 (internal citations omitted). Rule 8 requires more than "a plaintiff armed with nothing more than conclusions." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Id.* at 678-79 (internal citations omitted).

**B.     The Amended Complaint Is An Improper<br>"Group Pleading," Subject to Dismissal**

Plaintiff's Amended Complaint contains 16 causes of action spread across 366 paragraphs, wrought with ambiguity and a lack of clarity regarding which of the four named defendants did what. This is especially problematic for the claims against Long and Cunha. This is, at its core, a TCPA case where Plaintiff complains about phone calls she allegedly received. By Plaintiff's admission, none of the calls are attributable to Long or Cunha. The only allegation Long or Cunha

is that a call was "transferred to" involving (but not made or initiated by) Long.  Am. Compl., ¶¶ 167-68 (PageID.204).  Yet, Plaintiff lumps Long and Cunha together with every other defendant in all 16 causes of action, and nearly all allegations therein.

Plaintiff's initial complaint (ECF No. 1) merely alleged repeatedly that a "Defendant" performed an act, without naming which defendant. *See, e.g.,* Compl. ¶¶ 13 (PageID.5); 16 (PageID.5); 209 (PageID.33); 210 (PageID.33); 213 (PageID.33); 214 (PageID.33); 228 (PageID.36); 231 (PageID.36); 249 (PageID.39); 260-264 (PageID.40). Plaintiff's Amended Complaint did not meaningfully fix this problem. Now, instead of generically referring to a "Defendant" having performed an act, the Amended Complaint claims that *all* of the Defendants performed *every* act. *See, e.g.*, Am. Compl. ¶¶ 80, 84, 88-94, 96-97, 103, 107, 110, 146-147, 277, 279, 283-84, 288, 291, 294, 297-99, 301, 313, 315, 319, 333, 336-38, 342-48, 350-60 (all alleging that "Defendant Adroit, Defendant, Defendant American Business Association, Defendant Long, and Defendant Cunha" performed various acts, without any detail as to who allegedly did what).

The result is a continued lack of clarity regarding which of the four named defendants did what, the classic "group pleading."  The allegations are also self-contradicting because the acts are not capable of being performed by multiple persons or entities (*i.e.,* such as dialing, making or initiating a phone call). While there is some liberality in pleading TCPA cases, a plaintiff must nevertheless plead plausible claims under Rule 8, which is far from the case here.

*This Court* has described group pleading as "a litigation tactic," which raises claims against numerous defendants without regard to a defendant's particular actions. *Fedorova v. Foley*, No. 1:22-CV-991, 2023 WL 4543034, at *4 (W.D. Mich. July 7, 2023), *report and recommendation adopted*, No. 1:22-CV-991, 2023 WL 5266422 (W.D. Mich. Aug. 16, 2023). The Amended Complaint is the poster child of this tactic. "A complaint which lumps all defendants together and

does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." *Id.* (citing *Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1140 (W.D. Mich. 2019), *aff'd*, 831 F. App'x 161 (6th Cir. 2020)).

All 16 causes of action here are pled against all named defendants, without any supporting fact pertaining to what each defendant is alleged to have done (or not). This is especially important in a case like this one, where allegations of what a defendant did are key to the case and the defense thereof (as explained more fully in Section II.C below). The *Foley* Court dismissed every claim where this tactic was employed, as should the Court here.

## C.   Plaintiff's Claims Against Long and Cunha Are Not Properly Pled

TCPA claims (and similar claims based on a plaintiff's alleged receipt of phone calls), such as those Plaintiff attempts to assert here, must be brought either as direct liability claims (against those who actually make or initiate a call) or a vicarious liability theory (against those on whose behalf calls are made, where an agency relationship exists). *See generally Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 371 (6th Cir. 2015) and *Lucas v. Telemarketer Calling from (407) 476-5680*, No. 18-3633, 2019 WL 3021233, at *5-6 (6th Cir. May 29, 2019); *Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 WL 511217, at *4 (D. Ariz. Feb. 11, 2021) (a TCPA defendant may be liable if it "personally 'makes' a call in the method proscribed by the statute," or "vicariously, such as, if it was in an agency relationship with the party that made the offending call."); *Rogers v. Postmates, Inc.*, No. 19-CV-05619-TSH, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (stating "there are two potential theories of liability under the TCPA").

As set forth in Section II.B above, Plaintiff's shotgun "group pleading" falls tragically short of proper pleading. Highlighting the deficiencies pertaining to Long and Cunha is that the

77811969;1

allegations are so inadequate that Plaintiff does not plead direct *or* vicarious liability claims against any defendant, but certainly not as to Long and Cunha.

Even after amendment, there is not a single specific, non-conclusory allegation in the Amended Complaint that plausibly alleges that Long or Cunha *themselves* made or initiated a single call.. The only substantive mention of Cunha or Long's involvement in a call is in the context of a single phone call (Call 133 – the last call that Plaintiff alleges she received). Am. Compl., ¶¶ 148-203 (PageID.202-208). Plaintiff *admits* that the call was "transferred to" Long. *Id.*, ¶¶ 167-68 (PageID.204). In other words, Plaintiff admits Long did not make or initiate the call – no direct liability. *Lucas*, 2019 WL 3021233, at *5 (holding that "the district court properly dismissed any claims that these two defendants [were] directly liable under the TCPA" because they did not make or initiate the subject calls).

The allegations against Cunha are even more tenuous – verging on frivolous. The Amended Complaint does not contain a single allegation that Cunha made or initiated any call, or that he was ever even involved in a single call, in any fashion. The allegations related to Cunha are limited to references to a text message which although allegedly "sent by Defendant Long, the Text Message states it is from Defendant Cunha." Am. Compl., ¶¶ 182-185 (PageID.206). Thus, there can be no direct liability as to Cunha. *Lucas*, 2019 WL 3021233, at *5.

The Amended Complaint is equally devoid of allegations that Long or Cunha are vicariously liable. While Plaintiff attempts to create an agency relationship out of thin air to state a claim, and in a conclusory manner asserts that these calls were made "on behalf of" or "for the benefit of" Long or Cunha, there are no supporting facts pled. In fact, Plaintiff's admissions and *require* a finding of insufficient pleading based on vicarious liability.

To plead vicarious liability, there must be a showing of an agency relationship between the caller and the person/entity on whose behalf the call is made. *Id.*, at *5-6. Here, that means that Plaintiff must allege an agency relationship between the caller and Long and Cunha, and that the unnamed caller was making the call on behalf of or for the benefit of Long and Cunha.

> In determining that vicarious liability could be applied to claims for relief under the TCPA, the FCC noted that "[t]he classical definition of 'agency' contemplates 'the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control," and extends to situations where a "third party has apparent (if not actual) authority" to act as a principal's agent. Finally, ratification occurs when an agent acts for the principal's benefit and the principal does not repudiate the agent's actions.

*Id.*, at *6 (cleaned up and citations omitted). Plaintiff herself acknowledges this rule. *See* Am. Compl., ¶¶ 259-60 (noting that "the party on whose behalf a solicitation is made bears the ultimate responsibility for any violations").

Just like the initial complaint, there are no factually supported allegations in the Amended Complaint that any calls were made for the benefit of or on behalf of Long or Cunha. Conversely, all calls are alleged to have been made for the benefit of or on behalf of other defendants, namely, Adroit and ABA. *See, e.g.*, Am. Compl., ¶ 218 (PageID.211) ("[e]ach call was initiated with the intent and purpose of marketing Defendant Adroit and Defendant American Business Association Products."); ¶ 73 (PageID.190) ("Defendants Adroit and Defendant American Business Association" have people "try[ing] to sell their products and services."); ¶ 261 (PageID.220) (referring to Adroit as the "seller" on whose behalf the calls were made). There is facially no vicarious liability for Long and Cunha, who are individuals with no goods, products or services of their own to sell.

Plaintiff apparently hangs her hat on the fact that Long or Cunha were just *somehow* involved, or did *something* wrong. But such speculation and uncertainty cannot give rise to claims

11

against them. *Lucas,* 2019 WL 3021233, at *5 (holding that plaintiff "failed to sufficiently allege facts indicating that the defendants can be held vicariously liable under the TCPA" because even "knowingly assisting telemarketers" does not amount to the "formal agency," "apparent authority," or "ratification" necessary to allege a TCPA violation under a vicarious liability theory). Under plaintiff's theory, anyone who utters words during a call made by someone else or for someone else's benefit can be liable for violations of the TCPA and similar state statutes.

The allegations against Long and Cunha are facially insufficient to state any claims against them. All claims should be dismissed.

### D.     **Plaintiff Lacks Article III Standing To Assert Claims Against Long and Cunha**

Article III gives federal courts the power to adjudicate "Cases" and "Controversies," not hypothetical disputes. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016); U.S. Const. art. III, § 2. Whether there is a genuine case or controversy turns on whether a plaintiff has standing to bring the case. *Spokeo*, 578 U.S. at 338. Standing consists of three elements: (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) that the injury is "fairly traceable" to the defendant; and (3) that the injury "is likely to be redressed" if the court grants relief. *Id.* at 338-39. If the plaintiff fails to satisfy any of the three prongs, the case must be dismissed. *Savel v. MetroHealth Sys.*, 96 F.4th 932, 939 (6th Cir. 2024).

Plaintiff lacks Article III standing because the Amended Complaint does not and cannot allege any injury fairly traceable to Long or Cunha's conduct. Without regurgitating the lack of pleading clarity set forth in Sections II.B-C above, suffice it to say that, a careful review of the Amended Complaint reveals that there is no actionable conduct tied to either Long or Cunha.

Under Article III and U.S. Supreme Court precedent, there must be "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the

77811969;1

challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Despite that they are included as defendants in every cause of action pled, no plausible claims are made tying Long or Cunha to any specific alleged wrongdoing under available theories of liability. Dismissal for lack of standing is necessary.

**E.**     **Count I (TCPA Do-Not-Call Violations Under 47 C.F.R. § 64.1200(c)(2)) Fails**

Plaintiff asserts that Long and Cunha violated 47 C.F.R § 64.1200(c)(2) and 47 U.S.C. § 227(c)(5) by making calls to Plaintiff when she was on the national do not call list. Am. Compl., ¶ 44 (PageID.185); Count I *generally*. However, it is axiomatic that such a claim requires that a defendant make "more than one" call in order to state such a claim. *See* 47 U.S.C. § 227(c)(5)(A) (stating clearly that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may ... [bring] an action based on a violation of the regulations prescribed under this subsection…").  As set forth ad nauseum above, Plaintiff alleges <u>no calls</u> made by Long or Cunha, and at best, only allege their mere *involvement* in one call. This is fatal to the claim.

**F.**     **Count III (Asserting TCPA Violations Based On The "Internal Do Not Call" Regulations Under 47 C.F.R. § 64.1200(d)(3)) Fails**

Count III (Violation of "Internal Do Not Call" Regulations, 47 C.F.R. § 64.1200(d)(3)) fail because the operative question in addressing such a claim is whether the defendant had policies and procedures in place at the time of the call to prevent a call to someone on the "internal do not call" list. Plaintiff's Amended Complaint contains no such allegations.

A claim under 47 C.F.R. § 64.1200(d) is based on the failure "to implement certain procedures prior to the initiation of a phone call," <u>not</u> on the actual making of the call after making a request that the calls stop. *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 632 (6th Cir. 2009)

(holding that the violation of § 64.1200(d) is in "the initiation of the phone call without having implemented the minimum procedures"); *Buja v. Novation Cap., LLC*, No. 15-81002-CIV, 2017 WL 10398957, at *4 (S.D. Fla. Mar. 31, 2017) (stating that "in order to prove a violation, a plaintiff cannot rely solely on the fact that a provider failed to record or honor an individual's request to be placed on a DNC list. Rather, the plaintiff must establish that the calls he or she received were initiated prior to the implementation of proper procedures"); *Benzion v. Vivint, Inc.*, No. 12-61826-CIV, 2014 WL 11531368, at *5 (S.D. Fla. Jan. 17, 2014) (dismissing "internal do not call" claim under § 64.1200(d) because the plaintiff merely alleged that "Defendant called Plaintiff back after being asked not to ever call again; it does not allege that Defendant made either call while not having the proper procedures in place," which is the alleged violation); *Simmons v. Charter Commc'ns, Inc.*, No. 3:15-CV-317 (SRU), 2016 WL 1257815, at *13 (D. Conn. Mar. 30, 2016) ("[T]he failure to record a DNC request is not itself a violation of subsection (d)(3). However, it could be used as evidence of a failure to implement proper procedures prior to the initiation of a call"); *Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1127 (W.D. Mo. 2020) (stating that § 64.1200(d) prohibits initiating telemarketing calls without first instituting procedures that meet certain minimum standards… [and a] failure to honor a recipient's do-not-call request is a violation of the regulations *only insofar as* it potentially represents a failure to institute the minimum standards as described by § 64.1200(d)) (emphasis added); *Smith v. Truman Rd. Dev., LLC*, No. 4:18-CV-00670-NKL, 2020 WL 2044730, at *16 (W.D. Mo. Apr. 28, 2020) (same).

The key to such a claim is the failure to have procedures in place, <u>not</u> on the making of a call after a stop request. Plaintiff's Amended Complaint does not allege the existence or non-existence of procedures. The omission is fatal to Plaintiff's claim.

G.     **Count IV (Violation of 47 C.F.R. § 64.1200(d)(4)) Fails**

Count IV asserts that "all Defendants" (without specifying the particular conduct of any single defendant) violated 47 C.F.R. § 64.1200(d)(4) in making calls to Plaintiff and not providing the name of the caller. This claim fails for two reasons.

First, there is no private cause of action under 47 C.F.R. § 64.1200(d)(4). The Supreme Court has stated that Congress must create "private rights of action, explicit or implicit, to enforce federal laws." *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001).  If Congress does not create a private right of action, "a cause of action does not exist and courts may not create one." *Id.*

As relevant here, Congress created a private right of action for regulations promulgated under 47 U.S.C. § 227**(c)**.  *See* 47 U.S.C. § 227(c)(5)(A) (stating clearly that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may ... [bring] an action based on a violation of the regulations prescribed under this subsection…").

Congress did not, however, create a private right of action for regulations promulgated under 47 U.S.C. § 227**(d)**. *See* 47 U.S.C. § 227(d) (discussing an alleged prohibition on certain activities by telemarketers, but **not** providing a private right of action for violations). Indeed, 47 C.F.R. § 64.1200(d) was enacted pursuant to 47 U.S.C. § 227(d), which provides technical and procedural standards of compliance, and is therefore technical and procedural in nature, and which may be enforced only by the FCC pursuant to 47 U.S.C. § 227(d).

Courts resound in agreement that Section 227(d) "does not contain a similar private right of action, unlike other subsections" of the TCPA.  *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 745 (6th Cir. 2013); *Hurley v. Wayne Cty. Bd. of Educ.*, No. 16-cv-9949, 2017 WL 2454325, at *4 (S.D. W. Va. June 6, 2017) ("Congress did not intend private

parties to enforce either Section 227(d) or the regulations prescribed pursuant to that section."). Because "[47 C.F.R.] § 64.1200(d) was promulgated under [47 U.S.C.] § 227(d)," rather than subsection 227(c), "[t]here is no private right of action for alleged violations of § 64.1200(d)." *Braver*, 2019 WL 3208651, at *15.

Here, Plaintiff's claim is the prototypical "technical and procedural" claim under 47 U.S.C. § 227(d), for which no private right of action exists. *See, e.g., Braver v. NorthStar Alarm Servs., LLC*, No. CIV-17-0383-F, 2019 WL 3208651, at *14 (W.D. Okla. July 16, 2019), *amended on denial of reconsideration,* No. CIV-17-0383-F, 2019 WL 5722207 (W.D. Okla. Nov. 5, 2019) (agreeing that Section 64.1200(d) was promulgated under § 227(d) and holding that there is no private right of action for alleged violations of § 64.1200(d)); *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012) ("Defendant also argued [in support of dismissal] that none of the available TCPA private rights of action permit a recovery for violating those regulations [contained in 47 C.F.R. § 64.1200(d)] . . . The Court agrees with Defendant . . . "); *Burdge v. Ass'n Health  Care Mgmt., Inc*., No. 1:10-cv-00100, 2011 WL 379159, at *4 (S.D. Ohio Feb. 2, 2011) (dismissing "internal do not call claim" and holding that the regulations set forth in 47 C.F.R. § 64.1200(d) "are technical and procedural in nature and were promulgated pursuant to [S]ection 227(d) of the TCPA" for which there is no private cause of action); *Wilson v. PL Phase One Operations L.P.*, 422 F. Supp. 3d 971, 981 (D. Md. 2019) (dismissing TCPA claim under Section 64.1200(d) and noting that while the TCPA provides a private right of action under other subjections, Section 64.1200(d) "appears to fall within subsection *d*'s scope, which does not provide a private right of action).

Second, there is no allegation that ties Long or Cunha to this cause of action. Calls 1, 2, 3, 65, and 133 are alleged to have violated the regulation, which form the basis for Count IV. Yet,

77811969;1

Plaintiff does not allege that Long or Cunha were involved in the making or initiating of those calls, or that they were made on Long or Cunha's behalf. Indeed, only call 133 (Am. Compl., ¶¶ 148-203 (PageID.203-208)) mentions Long or Cunha, and the Amended Complaint merely alleges that the call (whoever made it) was transferred _to_ Long. Cunha, for his part, is not alleged to have been involved in the call at all. Long and Cunha cannot be liable for 47 C.F.R. § 64.1200(d)(4), even if a private cause of action did exist (it does not).

Because there is no private right of action to enforce the technical and procedural regulations contained within 47 C.F.R. § 64.1200(d), and because Plaintiff's claim is otherwise unrelated to conduct by Long and Cunha, Count IV should be dismissed.

### H.   Count V (Violation of 47 C.F.R. 64.1601(e)) Fails

Count V asserts that "all Defendants" (again, without specifying the conduct of any single defendant) violated 47 C.F.R. 64.1601(e) by using "spoofed" the caller ID information, or failing to provide caller ID information in making calls to Plaintiff. Count V fails for two reasons.

First, there is no private cause of action under 47 C.F.R. 64.1601(e). _See, e.g._, _Dobronski v. Tobias & Assocs._, No. 5:23-CV-10331, 2023 WL 7005844, at *7-8 (E.D. Mich. Sept. 25, 2023), _report and recommendation adopted in part sub nom. Dobronski v. Tobias & Assocs., Inc._, No. 23-10331, 2024 WL 1174553 (E.D. Mich. Mar. 18, 2024) (collecting cases); _Dobronski v. Selectquote Ins. Servs._, 462 F. Supp. 3d 784, 790 (E.D. Mich. 2020) ("Absent any authoritative basis for a private cause of action for 'spoofing' under [47 C.F.R. 64.1601(e)], the Court is disinclined to create one here."); _Dobronski v. Total Ins. Brokers_, LLC, No. 21-10035, 2021 WL 4452218, at *3 (E.D. Mich. Sept. 29, 2021) (holding "there is no private right of action for violations of § 64.1601(e)"); _Dobronski v. SunPath Ltd._, No. 19-13094, 2020 WL 8840311, at *6 (E.D. Mich. July 27, 2020) ("The TCPA does not confer a right to pursue a [47 C.F.R. 64.1601(e)] claim").

Second, and to reiterate the point above, there is no allegation in the Amended Complaint – not one – tying either Long or Cunha to the making or initiating of a single phone call at issue in this case. There are also no vicarious liability allegations against them.

## I.     Count VII (Violation of 47 C.F.R. § 64.1200(a)(7)) Fails

The gist of Count VII is that all Defendants (again, without specifying any particular defendant) did not connect two of the subject calls to a "live sales representative within two (2) seconds of the called person's completed greeting." Am. Compl., ¶ 303 (PageID.227). Count VII fails to state a claim against Long and Cunha.

First, Plaintiff does not identify any particular defendant who allegedly violated the regulation. As is the case with the remainder of Plaintiff's shotgun pleading, the allegations are conclusory and bereft of supporting facts, and thus insufficient to state a plausible claim for relief. Indeed, all four named defendants and the 133 "Doe Defendants" could not have *all* violated this regulation. This loose and ambiguous pleading does not satisfy Rule 8.

Second, this cause of action only relates to "Calls 1 and 2." Am. Compl., ¶ 303 (PageID.227). This claim fails against Long and Cunha because there is no allegation (nor could there be) that they were a part of, associated with, or actually made or initiated calls 1 or 2.

Third, to the extent there is a private cause of action available to Plaintiff under 47 C.F.R. § 64.1200(a)(7), to state such a claim, Plaintiff must allege information related to the caller's _overall_ abandonment percentage when making calls, which was not done here. *See, e.g.*, *Dahdah v. Rocket Mortg., LLC*, No. 22-11863, 2023 WL 5941730, at *5 (E.D. Mich. Sept. 12, 2023) (dismissing claim and holding that plaintiff "must plausibly allege that no more than three percent of live telemarketing calls were 'abandoned'… This provision requires information about the

abandonment rate, which Dahdah's complaint fails to mention. Accordingly, Count VII fails to state a claim for a violation of § 64.1200(a)(7) and must be dismissed."). Same goes here.

### J.  Plaintiff Fails to State a Viable Claim for Civil Conspiracy (Count VIII)

Plaintiff's conspiracy claim fails for three reasons.

First, Plaintiff has not pled a valid cause of action. "Knowledge and intent are elements of … civil conspiracy." *PNC Bank, Nat'l Ass'n v. Goyette Mech. Co., Inc.*, 140 F. Supp. 3d 623, 636 (E.D. Mich. 2015). While Plaintiff does allege that defendants had "actual knowledge of prior unlawful conduct that violated the TCPA," that is not the same "knowledge and intent" to commit a conspiracy required by law. *Id.*

Second, the claim contains only conclusory legal statements that mirror the language purportedly required to state a claim. There are no actual facts pled in support of the claim. The lack of facts related to an alleged agreement or plan amongst the defendants to conspire to harm Plaintiff requires dismissal for failure to state a claim. *See Twombly*, 550 U.S. 544, 557 (2007) (refusing to accept as true factually unsupported allegations made "upon information and belief" that defendant corporations had entered a conspiracy). "The mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss." *Arora v. Diversified Consultants, Inc.*, No. 20 C 4113, 2021 WL 2399978, at *5 (N.D. Ill. June 11, 2021). Plaintiff's conclusory allegations do not state a plausible claim under Rule 8. *See Crehan v. Countrywide Bank, FSB*, No. 1:11 CV 613, 2012 WL 4341049, at *11 (W.D. Mich. Feb. 15, 2012), *report and recommendation adopted*, No. 1:11-CV-613, 2012 WL 4340848 (W.D. Mich. Sept. 20, 2012) (dismissing conspiracy claim because "the allegations concerning this particular claim are, at best, vague and conclusory and do not rise above the level of speculation.").

Third, "a plaintiff alleging civil conspiracy … must allege more than a mere conspiracy; the plaintiff must allege a wrong resulting in damages." *Qualite Sports Lighting, LLC v. Ortega*, No. 1:17-CV-607, 2019 WL 7582823, at \*9 (W.D. Mich. Sept. 10, 2019). Plaintiff has not and cannot allege that she suffered actual damages. Statutory damages that may be available under the TCPA are insufficient. *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 768 (6th Cir. 2020) (stating that conspiracy requires "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in ***actual damages***") (emphasis added).

### K.  <u>Counts IX and X (MHSSA and MTCCCA) Fail</u>

In Counts IX and X, Plaintiff alleges that Long and Cunha (along with all other defendants) violated M.C.L. §§ 445.111a(5), 445.111b(1) and 484.125(2)(a) by making a telephone solicitation to Plaintiff on her residential telephone while the number was on the national do-not-call list; by not stating their names at the beginning of the telephone solicitation; and delivering a recorded message for the purpose of presenting commercial advertising. Am. Compl., ¶¶ 312-16 (PageID.228-29). These claims fail for the same reasons enumerated above. Plaintiff allegations in the Amended Complaint contradict themselves, and show that neither Long or Cunha was responsible for the making of any call. Thus, they could not have violated these provisions. Like everything else, the claims against Long and Cunha are based on mere speculation. Rule 8 requires far more.  Plaintiff has not and cannot state plausible claims against Long or Cunha.

### L.  <u>Count XI (Violation of M.C.L. § 484.125(2)(b)) Fails</u>

Count XI is based on M.C.L. § 484.125(2)(b), which by its express terms, applies <u>only</u> to "*intra*state commercial advertising." Even assuming that the conduct alleged in the Amended Complaint constitutes "commercial advertising," it is not in dispute that Long or Cunha's alleged conduct did not constitute "*intra*state" commerce. Plaintiff correctly admits that Long and Cunha

are Florida residents. Am. Compl., ¶¶ 5-6 (PageID.178). The Amended Complaint is devoid of any

allegation that any calls attributable to Long or Cunha came from within Michigan to Plaintiff in

Michigan. Count XI thus fails and should be dismissed with prejudice.

**M.      The Court Should Dismiss Plaintiff's Duplicative Claims and Remedies**

Plaintiff's shotgun pleading adopts a kitchen sink approach. Instead of asserting narrow,

detailed and plausible claims, she asserts 16 causes of action, many duplicative of one another.

The Court should dismiss or strike the duplicative claims and remedies.

Counts XII (Intrusion Upon Seclusion), XIII (Intentional Fraud/Misrepresentation), and

XIV (Negligent Misrepresentation) are duplicative of the various claims brought under the TCPA

and the Michigan Statutes. These claims are based on the identical facts as the TCPA claims and

Michigan Statutory claims; they are simply dressed up as tort claims. Courts routinely dismiss

such duplicative claims. *See, e.g., Old Republic Nat. Title Ins. Co. v. Escrow Title Servs., Inc.*, No.

1:08-CV-796, 2010 WL 2650435, at *5 (W.D. Mich. June 30, 2010) (granting defendant's motion

to dismiss duplicative claims); *Constantino v. Michigan Dep't of State Police*, 707 F. Supp. 2d 724,

732 (W.D. Mich. 2010), *amended*, No. 1:09-CV-506, 2010 WL 4115385 (W.D. Mich. Oct. 19,

2010) (holding that it is proper to dismiss duplicative claims).

Dismissal is also warranted because double recovery is not permitted for a single alleged

wrong.  *See, e.g., Currier v. PDL Recovery Grp., LLC*, No. 14-12179, 2017 WL 712887, at *12

(E.D. Mich. Feb. 23, 2017) ("the TCPA limits statutory damages to one award per call"); *Farris v.

Standard Fire Ins. Co.*, 280 F. App'x 486, 489 (6th Cir. 2008) ("The purpose of the doctrine of

election of remedies is to prevent double recovery for a single wrong, and requires the plaintiff in

such a scenario to choose one theory of recovery over another on which to proceed.").

The Court should therefore dismiss Counts XII, XIII, and XIV, and strike the Prayer for Relief since it seeks an impermissible double recovery.

### N.      The Amended Complaint Fails To Sufficiently Plead Intentional Fraud/Misrepresentation (Count XIII)

When alleging fraud, a party must state with particularity the circumstances constituting the fraud.  Fed. R. Civ. P. 9(b); *Bennett v. MIS Corp.*, 607 F.3d 1076,1100 (6th Cir. 2010).  The complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942-43 (6th Cir. 2009) (internal quotations and citation omitted).  A party must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of [the other party]; and the injury resulting from the fraud."  *Coffey v. Foamex L.P.,* 2 F.3d 157, 161-62 (6th Cir. 1993) (internal quotations and citations omitted).

Under Michigan law, the elements of fraud are: "(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury."  *Hi-Way Motor Co. V. Int'l Harvester Co.,* 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976); *Higgins v. Lawrence,* 107 Mich. App. 178, 184, 309 N.W.2d 194, 197 (1981).

As explained above, Plaintiff fails to identify any material representations made by Long or Cunha (or that any such representation was made knowing it was false or made recklessly), or that any such alleged representation was made with the intention it should be acted upon by

Plaintiff. Therefore, Plaintiff's claim for intentional fraud/misrepresentation (Count XIII) fails as a matter of law. Plaintiff has had the opportunity to amend and the claim remains deficient. It should be dismissed with prejudice.

**O.** **Plaintiff Fails to Sufficiently Plead Negligent Misrepresentation (Count XIV)**

Negligent misrepresentation occurs when a defendant breaches a professional or business duty of care to provide accurate information to another person who employs the defendant for that purpose. These claims commonly arise over a financial statement issued by an accountant or certain documents issued by attorneys. *Fejedelem v. Kasco,* 269 Mich. App. 499, 500-502, 711 N.W.2d 436 (2006) (accountant); *Ouwinga v. Benistar 419 Plan Servs.*, 694 F.3d 783, 796 (6th Cir. 2012) (attorney). The elements of such a claim are (1) a material misrepresentation made by defendant, (2) the representation was false, (3) the defendant was negligent in making the misrepresentation, and (4) the plaintiff suffered damages as a result. *Mickam v. Joseph Louis Palace Tr.,* 849 F. Supp. 516, 521 (E.D. Mich. 1994).

Plaintiff completely fails to identify which defendant or defendants made an alleged negligent representation, and fails to allege any facts or circumstances giving rise to a business or professional duty of care, let alone that any such duty was breached by defendants Long or Cunha. Plaintiff's claim for negligent misrepresentation (Count XIV) thus fails as a matter of law.

**P.** **Count XV (Civil Stalking Under M.C.L. § 600.2954) Fails**

Plaintiff's Amended Complaint adds a claim for "stalking" under M.C.L. § 600.2954. The statute provides that "a victim may bring a civil action against an individual who engages in conduct that is prohibited as stalking under Section 411h or 411i of the Michigan penal code, Mich. Comp. Laws §§ 750.411h and 750.411i." M.C.L. § 600.2954(1); *see also Pobursky v. Gee*, 249 Mich. App. 44, 46 (2001). "Stalking" is defined as "a ***willful course of conduct*** involving ***repeated***

or continuing *harassment* of another individual that would cause a *reasonable person* to feel *terrorized, frightened, intimidated, threatened, harassed, or molested* and that *actually causes* the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." M.C.L. § 750.411h(1)(d) (emphasis added).

A "course of conduct" requires "a pattern of conduct composed of a series of *2 or more* separate noncontinuous acts evidencing a continuity of purpose." M.C.L. § 750.411h(1)(a). "Harassment" is defined as "conduct directed toward a victim that includes, but is not limited to, *repeated* or *continuing unconsented contact* that would cause a *reasonable* individual to suffer emotional distress and that *actually causes* the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose." M.C.L. § 750.411h(1)(c). Finally, "emotional distress" requires "*significant* mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." M.C.L. § 750.411h(1)(b).

Plaintiff's claim of "stalking" fails as a matter of law for several reasons.

First, as detailed throughout this Motion and made clear by the Amended Complaint, neither Long or Cunha are alleged to have made any calls. At best, a single call was transferred to Long. Cunha was never involved. Courts uniformly hold that in order state a valid stalking claim, "there must be evidence of two or more acts of unconsented contact" by the defendant. *See, e.g.*, *Hayford v. Hayford*, 279 Mich. App. 324, 330, 760 N.W.2d 503, 508 (2008); *Nastal v. Henderson & Assocs. Investigations, Inc.*, 471 Mich. 712, 691 N.W.2d 1, 7 (2005) (same); *Gamrat v. McBroom*, 822 F. App'x 331, 334 (6th Cir. 2020) (same); *see also Rahaman v. State Farm Mut. Ins. Co.*, No. 22-10635, 2023 WL 5439212, at *9 (E.D. Mich. Aug. 23, 2023) (dismissing claim and stating "there is nothing in the record that demonstrates that Defendant engaged in a "course

of conduct" *beyond a single instance*) (emphasis added); *CNN. SEB*, 345 Mich. App. 151, 162, 4 N.W.3d 759, 765 (2023) ("the court must find that the respondent engaged in a 'course of conduct' 'composed of a series of 2 or more separate' acts… And to meet the requirement of 'harassment' under the statute, the court must find 'repeated or continuing unconsented contact' … *The court [erred] by characterizing a 'single incident' as sufficient*.") (emphasis added; internal citations omitted). This is reason alone to dismiss the stalking claim with prejudice.

Second, Courts routinely dismiss stalking claims, like here, where a plaintiff cannot plausibly allege that the defendant did anything wrong. *See, e.g.*, *Gamrat*, 822. F. App'x at 334-35 ("Most of Gamrat's allegations do not actually assert that the defendants contacted her… Thus, Gamrat does not plausibly allege a violation of Michigan's civil-stalking law."); *Rahaman v. Spine Specialists of Michigan*, No. 22-12349, 2024 WL 3795995, at *8 (E.D. Mich. Aug. 13, 2024) (dismissing the stalking claim because "the complaint fails to allege any specific instances of this alleged stalking… that would demonstrate a course of conduct or harassment as required under the statute"); *Courser v. Michigan House of Representatives*, 831 F. App'x 161, 181 (6th Cir. 2020) (affirming dismissal of stalking claim because plaintiff could not plausibly show that the defendants were responsible for the allegedly harassing conduct); *Dixon v. Ford Motor Co.*, No. 2:16-CV-14124, 2017 WL 6988798, at *7 (E.D. Mich. Dec. 15, 2017), *report and recommendation adopted*, No. 16-CV-14124, 2018 WL 453917 (E.D. Mich. Jan. 17, 2018) (dismissing stalking claim as "insufficiently pleaded and implausible" and reinforcing pleading standard, stating that "conclusory allegations are not acceptable… where no facts are alleged to support the conclusion or where the allegations are contradicted by the facts themselves") (internal citations omitted).

Third, the conduct attributable to Long and Cunha is not harassment, and would not make a reasonable person feel "terrorized, frightened, intimidated, threatened, harassed, or molested" as

a matter of law. To constitute harassment, and thus, stalking, the conduct complained of must constitute "unconsented contact." M.C.L. § 750.411h(1)(c). The lone call (Call 133) that allegedly involved Long and Cunha is facially not "unconsented contact." Indeed, the Amended Complaint describes that lone call that was "transferred to" Long in great detail. Am. Compl., ¶¶ 167-203. Dispositive on this point, Plaintiff alleges that Long asked a number of questions of Plaintiff, which she allegedly answered. *Id.* Plaintiff alleges that she engaged Long in this questioning. *Id.* This is the polar opposite of "unconsented" contact. If Plaintiff did not consent to the questions/contact, she should have told Mr. Long so or should have hung up. She did neither. She consented to his questions and apparently, answered them. *Id.* Plaintiff even alleges that she asked Mr. Long questions. *See, e.g.*, Am. Compl., ¶ 187 (PageID.207) ("Defendant Long was asked who the AA1Healthcare website was and what Adroit Health Group was"); ¶ 189 (PageID.207) (Long was asked "who he worked for"); ¶ 193 (PageID.207) ("Long was asked for his Michigan Insurance License number"); ¶ 241 (PageID.215-216) (admitting that Plaintiff "interact[ed]" with Long).

The Court may consider these statements by Plaintiff to Long as judicial admissions. *See, e.g.*, *United States v. Burns*, 109 F. App'x 52, 58 (6th Cir. 2004) (noting that courts "have discretion to consider a statement made in a brief to be a judicial admission" so long as the statement is "deliberate, clear, and unambiguous" (quoting *MacDonald v. General Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997))); *Hartford Fire Ins. Co. v. CMC Constr. Co.*, 3:06-cv-11, 2012 WL 12965761, at *7 (E.D. Tenn. Jan. 30, 2012) ("Statements made in court motions, memoranda, and briefs also may be treated as binding judicial admissions." (citing *City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990))). As the Court in *Cooper-Keel v. Keel-Worrell*, No. 1:22-CV-1236, 2024 WL 2178302, at *3 (W.D. Mich. May 15, 2024) very recently noted when considering a stalking

claim, "Plaintiff's binding admission precludes any assertion that [communication] constitutes unconsented contact."  The same result should follow here.

This is the only conduct attributable to Long.  There are no interactions, at all, alleged to have occurred between Cunha and Plaintiff.  Even on a motion to dismiss, the Court is authorized to review the allegations pertaining to the one interaction between Long and Plaintiff and determine as a matter of law that no stalking could have taken place under the facts alleged. *See, e.g.*, *Downing v. Life Time Fitness*, 483 F. App'x 12, 20 (6th Cir. 2012), *as amended* (May 18, 2012) (affirming dismissal of stalking claim "a reasonable person would not feel terrorized or intimidated by this conduct"); *Cooper-Keel*, 2024 WL 2178302, at *3 (noting that communication, "while perhaps annoying to Plaintiff, … would not even arguably cause a reasonable person to suffer the level of emotional distress required to establish a claim").

Finally, there is no basis to hold Long or Cunha vicariously liable for stalking under Michigan law. *See, e.g.*, *Rahaman v. State Farm Mut. Ins. Co.*, No. 22-10635, 2023 WL 5439212, at *9 (E.D. Mich. Aug. 23, 2023) ("Defendant cannot be held vicariously liable for [stalking based on] the alleged actions of Boedeker"); *Rahaman*, 2024 WL 3795995, at *8, n.9 ("Even if Plaintiff had alleged specific instances of stalking, her claim against SSC would also fail because she has not demonstrated that SSC is vicariously liable for any of Dr. Bagley's alleged actions.").

Tellingly, the undersigned could not locate a single decision where a stalking claim was brought alongside a TCPA/telephone solicitation claim. There are laws that govern telephone solicitations. Plaintiff has attempted to bring claims pursuant to those laws. The stalking claim is a sideshow, just more thrown into the kitchen sink. Long and Cunha's alleged conduct, even taken as true, falls far short of "stalking" under Michigan law. Under Plaintiff's theory, anyone involved (even tangentially) in a single phone call they did not even make can constitute "stalking" under

Michigan law. That is an absurd conclusion, one certainly contrary to public policy. The claim should be dismissed with prejudice.

**Q.**    **Count XVI (Violations of the FTSA) Fails**

Count XVI asserts three alleged violations of the FTSA. Each is defective.

First, Plaintiff claims that Long and Cunha violated Section 501.059(2), Florida Statutes, because they "made unsolicited telephone calls to a residential phone number and did not identify themselves." *Id.*; Am. Compl., ¶ 362 (PageID.325). This claim fails because Long and Cunha are not alleged to have "made" any calls to Plaintiff.  Even *assuming arguendo* that this section did apply to Long somehow because of his involvement in Call 133 after it was "transferred to" him, Plaintiff admits that Long did identify himself. Am. Compl., ¶ 168 (PageID.204). As to Cunha, he is not alleged to have been involved in any call and thus had no obligation to – and could not have – identified himself. The claim thus fails against both Long and Cunha.

Second, Plaintiff's claim that Long and Cunha violated Section 501.059(4), Florida Statutes (which would prohibit the making of calls to numbers on the Florida-specific do not call list) fails because, again, Long and Cunha did not make any calls.  Also, to establish a violation of § 501.059(4), Plaintiff must be on the <u>Florida specific</u> "do not call" list.  This is an express requirement of the statute.  *See* Section 501.059(4), Florida Statutes (stating that it is a violation of the FTSA to make "any unsolicited telephonic sales call… if the number for that telephone appears in the then-current quarterly listing published by the ***department***") (emphasis added). Section 501.059(1)(d), Florida Statutes, defines "Department" as the Florida Department of Agriculture and Consumer Services. Plaintiff alleges that she registered her number on the *National* Do Not Call Registry." Am. Compl., ¶ 44 (PageID.185).  There is no allegation that she

registered on the <u>Florida specific</u> Do Not Call list with FDACS, as required to state a cause of action.  This is fatal to Plaintiff's claim.

Finally, Plaintiff's claim based on Section 501.059(5), Florida Statutes fails as well. The statute states that "a telephone solicitor or other person may not initiate an outbound telephone call [to someone] who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call." *Id.* At risk of beating a dead horse, as Plaintiff admits, Long was merely transferred a single call, and Cunha not involved in any calls, so they were never informed of Plaintiff's "do not call" request, if it was indeed ever made, and they cannot be held liable in any event because they are not alleged to have "initiated an outbound telephone call" to Plaintiff.  Plaintiff expressly pleads a call was "transferred" to Long. That is it.

### R.        Plaintiff Lacks Article Standing to Seek Injunctive Relief

Plaintiff's Amended Complaint seeks injunctive relief "to prevent[] Defendants from violating the TCPA in the future." Am. Compl., Prayer for Relief, ¶¶ 10-11 (PageID.237-238). Plaintiff lacks standing to seek that relief.

The Complaint refers to past conduct over a two day period in March 2024 (again, not even tied to Long or Cunha). Plaintiff admitted in her first complaint that the calls she complains about "were the only calls known to Plaintiff." Compl., ¶ 213 (PageID.33). Plaintiff's Amended Complaint does not add any specifics about any new calls.  *See* Am. Compl., Exs. 1-2 (PageID.240-279) (which are the same call logs that were attached to the initial complaint).

Like its predecessor, the Amended Complaint is devoid of allegations that there is a threat of future calls *from any of the Defendants*, especially Long and Cunha. Plaintiff has not and cannot make a showing of a threat of future harm or repeated injury. In an effort to escape an adverse ruling, Plaintiff added a section to her Amended Complaint about alleged "ongoing calls and

harassment," but admits that those calls she is "still getting" are from "unknown parties," not any of the defendants. Am. Compl., ¶ 272 (PageID.221).

Getting calls from "unknown parties" is insufficient as a matter of law to warrant injunctive relief under Supreme Court precedent. *See, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03, 103 S. Ct. 1660, 1665, 75 L. Ed. 2d 675 (1983) (commenting on standing in the context of injunctive relief, and noting that the analysis turns on "whether there is a real and immediate threat of repeated injury," and stating that the court "could not find a case or controversy" where "the threat to the plaintiffs was not sufficiently real and immediate to show an existing controversy" because the future threat of injury was speculative and uncertain) (cleaned up and citations omitted); *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019) ("The distinction between past and ongoing or future harms is significant because the type of harm affects the type of relief available. Past harm … does not entitle a plaintiff to seek injunctive or declaratory relief … fact that a harm occurred in the past 'does nothing to establish a real and immediate threat that' it will occur in the future, as is required for injunctive relief.").

District Courts have recently dismissed injunctive relief requests in TCPA cases in similar circumstances. *See, e.g., Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1251-52 (S.D. Fla. 2019) (dismissing request for injunctive relief in TCPA case for lack of standing where there was nothing suggesting the possibility of future injuries); *Zononi v CHW Group, Inc.*, 22-CV-14358, 2023 WL 2667941, at *5 (S.D. Fla Mar. 7, 2023) (holding that plaintiff lacked standing to seek injunctive relief in TCPA case where there were "no allegations to suggest a threat of future injury, other than the mere fact of past injuries. Without more, past injuries alone do not suffice."); *Lyman v. Excel Impact, LLC*, Case No. 1:23-cv-23767-BB, ECF No. 38, at p. 8-9 (S.D. Fla, Feb. 28, 2024) (holding that "Plaintiff's mere[] alleg[ation] that the harm will likely continue" is

insufficient to confer standing); *Smith v. Miorelli*, No. 22-10663, 2024 WL 770360, at \*4 (11th Cir. Feb. 26, 2024) (holding that plaintiffs lacked Article III standing to pursue injunctive relief where "none of named plaintiffs alleged any threat of future injury, let alone a threat that was real and immediate"); *Hinesley v. Ensurem II, LLC*, No. 23-cv-5286-TKW-HTC, ECF No. 51, at pp. 7-11 (N.D. Fla. May 21, 2024) (dismissing request for injunctive relief in TCPA complaint where Plaintiff did not "adequately allege standing to seek that relief" where the complaint only alleged past injuries – namely, allegedly receiving 10 phone calls in the distant past, and did not allege that the plaintiff continued to receive the calls or that there was a threat they would continue).

Like the cited cases, there is no threat of future harm here. Plaintiff lacks standing to seek injunctive relief.

### S.   The Court Should Strike Certain Portions of the Amended Complaint

Under Rule 12(f), Fed. R. Civ. P., a court may strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. The Court should strike Paragraphs 19-40 and 45-53, and all references to an autodialer, from the Amended Complaint.

Paragraphs 19-40 (PageID.181-185) contain legal conclusions, legal background regarding the TCPA and the Michigan Statutes sued under, and citations to various unauthenticated websites regarding "robocalls" generally and how "Americans" allegedly dislike them. These are not factual allegations that have any bearing on the issues in this case or Plaintiff's specific claims.

Paragraphs 45-53 (PageID.185-186) relate to calls *other than those at issue in this case*, and refer to Plaintiff's hospitalization for a "loss of pregnancy via stillbirth" from 2021, years before the alleged calls at issue in this case.  These paragraphs *per se* impertinent and immaterial.

Separately, not one of the 16 causes of action asserts that any of the Defendants (especially Long or Cunha) utilized an autodialer or ATDS in calling Plaintiff. However, Plaintiff's Complaint

nevertheless contains scattered references to the use of an "autodialer" (a/k/a "automatic telephone dialing system" or "ATDS"). *See* Am. Compl., ¶¶ 69-75, 80, 91, 110, 146, 147. While Count II is entitled "TCPA Violations Autodialer Calls," the substance of the allegations do not assert an ATDS claim. Without a standalone TCPA claim based on the use of an ATDS, Plaintiff's references thereto should be stricken, as they are extra noise in an already convoluted set of allegations that do not support the claims pled against the defendants named.

Finally, even if an ATDS claim *was* pled, there would be no viable claim based on the use of ATDS under *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021) and its progeny. *See, e.g.*, *Fluker v. Ally Fin. Inc.*, No. 22-CV-12536, 2023 WL 8881154, at *2-3 (E.D. Mich. Dec. 21, 2023) (dismissing ATDS claim after *Facebook* based on lack of sufficient allegations pertaining to the use of a random or sequential number generator); *Barry v. Ally Fin., Inc.*, No. 20-12378, 2021 WL 2936636, at *4 and *7 (E.D. Mich. July 13, 2021) (same).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Long and Cunha respectfully request that the Court enter an Order dismissing Plaintiff's Amended Complaint with prejudice, awarding Long and Cunha their attorneys' fees and costs to the fullest extent permitted by law, and for such further and additional relief as the Court deems just and proper.

Dated: September 10, 2024

/s/ Janet Ramsey
Janet Ramsey (P63285)
WARNER NORCROSS + JUDD LLP
150 Ottawa Ave., NW, Ste. 1500
Grand Rapids, Michigan 49503
616.752.2736
jramsey@wnj.com

Jeffrey B. Pertnoy
AKERMAN
Three Brickell City Centre
98 Southeast Seventh Street
Miami, Florida 33131

305.982.5524
Jeffrey.pertnoy@akerman.com

Thomas B. Fullerton (P80690)
Akerman LLP
71 S. Wacker Dr., Ste. 4600
Chicago, IL 60606
312.634.5726
Thomas.Fullerton@akerman.com

*Attorneys for Defendants Tyler Long and Wesley Cunha*

77811969;1