UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOREN OWENS,

     Plaintiff,

                             Case No. 1:24-cv-547

v.

                             HON. JANE M. BECKERING

ADROIT HEALTH GROUP, LLC, et al.,

     Defendants.

_____/

## OPINION AND ORDER

This case concerns 133 telephone solicitations in a three-day span of time. Plaintiff Loren Owens initiated this action against Defendants Adroit Health Group, LLC d/b/a Strata Health Group (Adroit), American Business Association (ABA), Wesley Cunha (Cunha), Tyler Long (Long), and John Does 1–133 ("Doe Defendants"), alleging that their telemarketing practices violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 et seq., and related state and common law protections. Now pending before the Court are the motions to dismiss filed by Defendants Cunha and Long (ECF No. 28) and Adroit and ABA (ECF No. 32). For the following reasons, the motions are properly granted in part and denied in part.

### I.       BACKGROUND

Defendant Adroit is a Texas company that sells health insurance (First Amended Complaint [FAC, ECF No. 24] ¶¶ 3 & 63). Defendant ABA, an Illinois corporation, "sell[s] membership[s] … and offer[s] discounted rates on Defendant Adroit Policy; the membership is sold with the health insurance policy" (id. ¶¶ 4 & 64). Defendant Cunha is a Michigan licensed

insurance agent (*id.* ¶¶ 6 & 322).  Defendant Long is a Florida licensed insurance agent (*id.* ¶ 5).

Doe Defendants 1–133 are "fictitious names of individuals, businesses, lead generators or brokers,

and/or telemarketers that Plaintiff alleges for the purpose of substituting names of defendants

whose identities are unknown but may be disclosed in discovery and should be made parties to

this action" (*id.* ¶ 7).

Plaintiff alleges, based on information and belief, that Adroit, as part of its marketing

program, sold telemarketing "leads" to Defendants Long, Cunha, and the Doe Defendants (*id.*

¶ 68).  Plaintiff alleges that Adroit also provides its agents with access to automated telephone

dialing software/platforms and services that allow them to contact consumers to sell the Adroit

and ABA products (*id.* ¶¶ 69 & 73).  The automated telephone dialing platforms use a random

number or sequential number generator and have the capacity to call people at random with no

human involvement (*id.*).  Plaintiff alleges that the agents earn a commission when they sell

products and services of Defendants Adroit and ABA (*id.* ¶ 67).

Plaintiff, a Michigan resident, alleges that between March 21 to March 23, 2024, she

received 133 phone calls, "knowingly and/or willfully initiated auto-dialed calls with pre-recorded

messages to the Plaintiff's Residential Cell Phone number for commercial purposes of selling

health insurance and membership in the American Business Association and thereby also the

products and services of … Defendant Adroit, Defendant American Business Association,

Defendant Long and Defendant Cunha" (*id.* ¶¶ 2 & 91).  According to Plaintiff, "[a]ll [o]ne

[h]undred and thirty-three (133) phone calls were initiated without the Plaintiff's prior express

consent, permission, or invitation" (*id.* ¶ 91).  Plaintiff alleges that when she called any of the

numbers and asked for contact information for the company, "the call center employees would

hang up" (*id.* ¶ 105).

According to Plaintiff, "[e]ach call was initiated with the intent and purpose of marketing Defendant Adroit and Defendant American Business Association Products" (*id.* ¶ 218). "Call No. 133" on March 23, 2024 culminated in Defendant Long texting her a proposed contract from Defendant Cunha, on behalf of Defendants Adroit and ABA (FAC ¶¶ 147–82). The contract would have authorized a recurring monthly payment to Adroit and included her representation that "all … prior calls to any cellular telephone number(s) that Member may own, contract, or be assigned were consensual and Member does hereby waive any claim(s) that calls to these cellular telephone numbers were in violation of any State or Federal law, specifically including, but not limited to, the Telephone Consumer Protection Act ('TCPA')[.]" *See* ABA Product Enrollment Contract, Pl. Ex. 1 [ECF No. 51-2 at PageID.592, 602], referenced in FAC ¶¶ 176, & 181–88. Plaintiff alleges that she has "never been a customer of Defendant Adroit, Defendant, American Business Association, Defendant Long, and Defendant Cunha and has never consented to receive calls from Defendant Adroit, Defendant, American Business Association, Defendant Long, and Defendant Cunha" (FAC ¶ 56).

On May 24, 2024, Plaintiff initiated this action with the filing of a Complaint against Defendants Adroit, ABA, Cunha, Long and Does 1–133.[1] Defendants Cunha and Long moved to dismiss the Complaint, and this Court, without addressing the merits of their motion, granted Plaintiff leave to amend the Complaint (Order, ECF No. 18). On August 27, 2024, Plaintiff filed

---

[1] Plaintiff's use of a "John Doe" designation is simply a placeholder. An action is not commenced against such party until he is both identified and served with process. *Bufalino v. Michigan Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968). If a plaintiff does not substitute a named party for a John Doe defendant after being given a reasonable opportunity to identify and serve the individual, then the claims asserted against the unnamed defendant(s) are subject to dismissal. *Khaled v. Dearborn Heights Police Dep't*, No. 14-14743, 2016 WL 7188027, at *5 (E.D. Mich. Dec. 12, 2016), aff'd, 711 F. App'x 766 (6th Cir. 2017). *See* FED. R. CIV. P. 4(m); W.D. Mich. LCivR 41.1.

3

a First Amended Complaint (ECF No. 24), alleging seven claims under the TCPA (Counts 1–7),

five state-law claims (Counts 9–11, 15, & 16), and four common-law claims (Counts 8, 12, 13, &

14), as follows:

1.  TCPA Violations: Calls to Number on the National Do-Not-Call List, 47 C.F.R. § 64.1200(c)(2)

2.  TCPA Violations: Autodialer Calls, 47 U.S.C. § 227(b)(1)(A)(iii) & 47 C.F.R. § 64.1200(a)(1)(iii)

3.  TCPA Violations: Do-Not-Call Request Ignored, 47 C.F.R. § 64.1200(d)(3)

4.  TCPA Violations: Failure to Identify, 47 C.F.R. § 64.1200(d)(4)

5.  TCPA Violations: Falsified Caller ID, 47 C.F.R. § 64.1601(e)(1)

6.  TCPA Violations: Recorded Message Calls, 47 U.S.C. § 227(b)(1)(B) & 47 C.F.R. § 64.1200(a)(3)

7.  TCPA Violations: Abandoned Calls, 47 C.F.R. § 64.1200(a)(7)(*i*)

8.  Civil Conspiracy

9.  Violation of the MHSSA [Michigan Home Solicitation Sales Act], MICH. COMP. LAWS § 445.111a(5) & MICH. COMP. LAWS § 445.111b(1)

10. Violation of the MTCCA [Michigan Telephone Companies as Common Carriers Act], MICH. COMP. LAWS § 484.125(2)(a)

11. Violation of the MTCCA, MICH. COMP. LAWS § 484.125(2)(b)

12. Intrusion upon Seclusion

13. Intentional Fraud/Misrepresentation

14. Negligent Misrepresentation

15. Civil Stalking, MICH. COMP. LAWS § 600.2954

16. Violation of the FTSA [Florida Telephone Solicitation Act], FLA. STAT. § 501.059

This Court dismissed Defendants Cunha and Long's first motion to dismiss as moot (Order, ECF No. 25), and Defendants Cunha and Long filed their motion to dismiss pending at bar (ECF No. 28). Plaintiff filed a response (ECF No. 51) and Defendants Cunha and Long filed a reply (ECF No. 59). Defendants Adroit and ABA also filed a motion to dismiss (ECF No. 32). Plaintiff filed a response (ECF No. 52), and Defendants Adroit and ABA filed a reply (ECF No. 61). Having considered the parties' submissions, the Court concludes that oral argument is unnecessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d).

## II.    ANALYSIS

### A.    Motion Standard

Under Federal Rule of Civil Procedure Rule 8(a), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Rule 12(b)(6) authorizes the court to dismiss a claim for relief in any pleading if it "fail[s] to state a claim upon which relief can be granted[.]" FED. R. CIV. P. 12(b)(6). A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. A plaintiff needs to allege sufficient factual content to "'nudg[e]' his claim of

purposeful discrimination 'across the line from conceivable to plausible.'" *Id.* at 683 (quoting *Twombly*, 550 U.S. at 570).

In deciding a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the non-movant and accept all well-pleaded factual allegations in the complaint as true. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. When considering a motion to dismiss for failure to state a claim, the court generally does not consider matters outside the pleadings, although the court may consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

## B.    Discussion

Defendants Cunha, Long, Adroit, and ABA make largely overlapping—and sometimes virtually identical—arguments that Plaintiff's First Amended Complaint is an improper "group pleading" and that nearly all of Plaintiff's sixteen claims do not state plausible claims for relief. Defendants also seek to have this Court strike certain portions of the First Amended Complaint and/or dismiss the entire pleading as the product of fraud. The Court considers their arguments and Plaintiff's responses in turn.

1.    **"Group Pleading"**

Defendants Cunha, Long, Adroit, and ABA first seek dismissal of Plaintiff's First Amended Complaint based on their argument that the First Amended Complaint is an improper "group pleading" that lumps Defendants together (ECF No. 29 at PageID.327–332; ECF No. 33 at PageID.377–381). Defendants briefly argue that the lack of pleading clarity also means that Plaintiff lacks Article III standing because the First Amended Complaint does not allege any injury that is fairly traceable to their individual conduct (ECF No. 29 at PageID.332–333; ECF No. 33 at PageID.381–382).

In response, Plaintiff argues that the First Amended Complaint alleges enough specific facts to put Defendants on notice of her claims, demonstrates Defendants' roles in the alleged telemarketing violations, and identifies sufficient harm caused by the telemarketing calls that Defendants initiated or controlled to establish standing (ECF No. 51-1 at PageID.560–569; ECF No. 52-1 at PageID.644–651).

Congress passed the TCPA in 1991 to address "the proliferation of intrusive, nuisance calls" to consumers and businesses from telemarketers. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021). "Advances in automated technology made it feasible for companies to execute large-scale telemarketing campaigns at a fraction of the prior cost, dramatically increasing customer contacts." *Id.* "[T]he primary purpose of the TCPA was to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls." *Parchman v. SLM Corp.*, 896 F.3d 728, 738 (6th Cir. 2018). Accordingly, the Sixth Circuit has held that an unsolicited marketing call that invades a plaintiff's privacy is precisely the type of injury that falls within the ambit of what Congress deemed to be an actionable harm when it enacted the TCPA. *Dickson v. Direct Energy, LP*, 69 F.4th 338, 342–

49 (6th Cir. 2023) (discussing injury-in-fact under the TCPA and common law). Article III standing further requires that a plaintiff demonstrate that the alleged injury-in-fact is "fairly traceable" to the challenged conduct. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Regarding conduct for which a party may be liable under the TCPA, the Sixth Circuit has acknowledged that even if a defendant did not personally place a call, the defendant may be vicariously liable for TCPA violations "under a broad range of [federal common-law] agency principles, including not only formal agency, but also principles of apparent authority and ratification." *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 371–72 (6th Cir. 2015) (citation omitted).

Plaintiff's First Amended Complaint is certainly not a model of clarity. The pleading nonetheless provides Defendants with "fair notice" of what her claims are and the grounds upon which they rest. Plaintiff alleges that all Defendants knowingly participated in a conspiracy to market Adroit's healthcare products and ABA memberships, a conspiracy that violated the TCPA, state law, and common law. Specifically, Plaintiff alleges that Defendants Adroit and ABA were the principals and that their agents, including Cunha, Long, and the Doe Defendants, caused 133 auto-dialed and pre-recorded calls to be placed to Plaintiff's phone without her consent. *See* FAC ¶¶ 58–73, 91, 167–68, 187–90, 193–94, 211–21. Plaintiff alleges that Defendants' agents used Adroit's proprietary systems and data to generate leads, initiate calls, and engage in telemarketing activities on behalf of both Adroit and ABA. *See id.* ¶¶ 69, 75–80. Additionally, Plaintiff identifies the specific and interrelated roles played by Defendants Cunha and Long in the telemarketing scheme. For example, Plaintiff alleges that Defendant Long was directly involved in one of the telemarketing calls made to Plaintiff. *See id.* ¶¶ 73–74, 167–68. And Plaintiff alleges that Defendant Cunha allowed Long to use resources from his license in Michigan to conduct illegal sales of insurance products. *See id.* ¶¶ 183–85.

Last, Plaintiff alleges that Defendant Long texted her a proposed contract from Defendant Cunha, on behalf of Defendants Adroit and ABA, to authorize a recurring monthly payment to Adroit and procure her waiver of any telemarketing violations.  *See* ABA Product Enrollment Contract, Pl. Ex. 1 [ECF No. 51-2 at PageID.592, 602], referenced in FAC ¶¶ 176, & 181–88.  In sum, Plaintiff alleged sufficient facts so that Defendants each have fair notice of what Plaintiff believes their roles were in the described violations that caused her harm.  That Plaintiff collectively refers to the parties as "Defendants" is not so confusing or imprecise that Defendants are unable to draft answers to her First Amended Complaint.  Accordingly, the allegations are also sufficient, at this juncture, to satisfy the "traceability" requirement for standing.  Defendants' motions to dismiss on this ground are therefore denied.

**2.** **Failure to State a Claim**

    **a.** <u>**Claims under the TCPA**</u>

The TCPA contains a number of restrictions on the use of automated telephone equipment, including prohibitions in subsection (b) governing the "initiat[ion of] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party," 47 U.S.C. § 227(b)(1)(B), and restrictions in subsection (c) governing the protection of "subscriber privacy rights," *id.* § 227(c).  Congress directed the Federal Communications Commission (FCC) to prescribe regulations governing both topics.  *Id.* §§ 227(b)(2) & (c)(2).  Private parties can sue under the TCPA to recover for their statutory damages for violations of the robocall restrictions, *id.* § 227(b)(3), and their subscriber privacy rights, *id.* § 227(c)(5).  *See generally Charvat v. NMP, LLC*, 656 F.3d 440, 448–49 (6th Cir. 2011) (examining the "significant textual differences" between §§ 227(b)(3) and 227(c)(5) and

concluding that §§ 227(b)(3) and 227(c)(5) "target different harms" and  are "distinct provisions to be treated independently").

"Where the TCPA permits certain automated calls, it still prescribes mandatory 'technical and procedural standards'" in subsection (d), 47 U.S.C. § 227(d).  *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 745 (6th Cir. 2013).  Likewise, subsection (e) prohibits providing "misleading or inaccurate caller identification information."  47 U.S.C. § 227(e).  Last, subsection (g) describes actions that state attorneys general may bring on behalf of their citizens.  *Id.* § 227(g)(1).  Under 47 U.S.C. § 503(b), the FCC can also seek forfeiture penalties for willful or repeated violations of the statute.  *See generally Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 616 (2020) (describing enforcement mechanisms).

Plaintiff alleges seven claims under the TCPA (Counts 1–7), specific to certain regulations, and Defendants challenge the sufficiency of Plaintiff's allegations in all but Counts 2 and 6.  The five regulations relevant to the motions here require a telemarketer to

- honor a person's registration on the national do-not-call registry, § 64.1200(c)(2) (Count 1);

- honor a person's request not to be called, § 64.1200(d)(3) (Count 3);

- provide "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted," § 64.1200(d)(4) (Count 4);

- transmit caller identification information, § 64.1601(e)(1) (Count 5); and

- provide a "prerecorded identification and opt-out message" and an "automated, interactive voice- and/or key press-activated opt-out mechanism," "within two (2) seconds after the called person's completed greeting," whenever a live sales representative is not available to speak with the person answering the call, § 64.1200(a)(7)(*i*) (Count 7).

***"Calls to Number on the National Do-Not-Call List"*** (Count 1).  In Count 1, Plaintiff alleges that she registered her phone number on the national Do-Not-Call Registry, making all 133

calls in violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) (FAC ¶¶ 277–83).  In support of dismissal of Count I, Defendants Cunha and Long argue that such a claim requires "more than one" call by a defendant, and that Plaintiff, at best, alleges involvement by Cunha and Long in merely one call (ECF No. 29 at PageID.333).

The private cause of action provided in § 227(c)(5) is for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).  As Plaintiff points out in response, she alleges that Defendant Long participated in the March 23, 2024 "Call 133" placed from phone number 269-242-2943, which is the same number that also called Plaintiff on March 22, 2024 at 10:47 AM, 12:17 PM, and 6:19 PM (ECF No. 51-1 at PageID.569–570).  In other words, Plaintiff has plausibly alleged that Defendant Long is tied to at least four of the 133 phone calls.  Defendants Cunha and Long have not demonstrated that they are entitled to dismissal of Count 1 at this juncture.

***"Do-Not-Call Request Ignored"*** (Count 3).  In Count 3, Plaintiff alleges that "Calls 66–133" violated 47 C.F.R. § 64.1200(d)(3) "as evidenced by the repeated number of calls and the telephone call in which the telemarketer admitted that the Plaintiff's telephone number was on the do-not-call list" (FAC ¶¶ 291–92).  In support of dismissal of Count 3, Defendants Cunha and Long argue that Plaintiff's claim fails because she does not allege a failure to "implement policies and procedures" to prevent such calls (ECF No. 29 at PageID.333–334).  In response, Plaintiff argues that the absence of an allegation about Defendants' procedures in the First Amended Complaint is not fatal where the failure to comply with internal procedures as outlined under § 64.1200(d) can be inferred from the continued violations of a person's do-not-call requests (ECF No. 51-1 at PageID.570–571).

According to the Sixth Circuit, the conduct prohibited by subsection (d)(3) is "the initiation of the phone call without having implemented the minimum procedures." *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 632 (6th Cir. 2009).  Here, Plaintiff alleges that she received "Call No. 65" on March 21, 2024 at 5:57 p.m. (FAC ¶ 109).  After Call No. 65 was transferred to another agent, Plaintiff "asked that they not call her anymore" (*id.* ¶ 132).  Nonetheless, according to Plaintiff, the calls "continued while Plaintiff was working a 10-hour shift on March 21, 2024" (*id.* ¶ 134).  The factual allegations in the First Amended Complaint, taken in the light most favorable to Plaintiff, support the reasonable inference that proper procedures did *not* exist where Plaintiff did not stop receiving phone calls after making her request.  Hence, Defendants Cunha and Long's argument does not support dismissal of Count 3 at this juncture.

*"Failure to Identify"* **(Count 4).**  In Count 4, Plaintiff alleges that Defendants, through their agents, violated 47 C.F.R. § 64.1200(d)(4) by placing Calls 1, 2, 3, 65, and 133 without providing "the name of the individual caller, and/or the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted" (FAC ¶¶ 294–95).  In addition to reiterating that Plaintiff's claim is unrelated to their specific conduct, Defendants Cunha and Long argue that Count 4 fails because there is no private right of action to enforce the technical and procedural requirements set forth in this regulation (ECF No. 29 at PageID.335–337).  Defendants Adroit and ABA similarly argue that Plaintiff lacks a private cause of action to pursue this alleged violation (ECF No. 33 at PageID.382–384).

In response, Plaintiff points out that other district courts have found that parties may bring a private cause of action based on a violation of the failure-to-identify regulation (ECF No. 51 at PageID.571–572; ECF No. 52-1 at PageID.651–652).

"[F]ederal regulations in and of themselves cannot create a private cause of action unless the action is at least implied from the applicable statute." *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000).  The Sixth Circuit has definitively held that the purported private cause of action on which Plaintiff relies does not exist.  *See Ashland Hosp.*, 708 F.3d at 745 (examining the plaintiff's failure-to-identify claim and determining that § 227(d) "does not contain a similar private right of action, unlike other subsections" of the TCPA).  *See also Burdge v. Ass'n Health Care Mgmt., Inc.*, No. 1:10-cv-100, 2011 WL 379159, at *4 (S.D. Ohio Feb. 2, 2011) (similarly determining that the "identification regulations" set forth in 47 C.F.R. § 64.1200(d)(4) "are technical and procedural in nature and were promulgated pursuant to section 227(d) of the TCPA," for which there is no private cause of action).  This Court is bound by decisions of the Court of Appeals for the Sixth Circuit.  Therefore, Defendants have demonstrated that they are entitled to dismissal of Count 4.

*"Falsified Caller ID"* (**Count 5).**  In Count 5, Plaintiff alleges that Defendants, through their agents, violated 47 C.F.R. § 64.1601(e)(1) by taking "deliberate and excessive actions to manipulate the telephone network equipment to provide false caller identification information" (FAC ¶¶ 297–99).  Defendants Cunha, Long, Adroit, and ABA argue that there is likewise no private cause of action under this regulation (ECF No. 29 at PageID.337–338; ECF No. 33 at PageID.385).  In response, Plaintiff points out that courts are also split on whether 47 C.F.R. § 64.1601(e) was promulgated under 47 U.S.C. § 227(c) or under 47 U.S.C. § 227(d) of the TCPA (ECF No. 51-1 at PageID.573– 574; ECF No. 52-1 at PageID.652).

Plaintiff again fails to identify any precedent by which this Court is bound.  Other district courts within Michigan have consistently held that there is no private cause of action under 47 C.F.R. § 64.1601(e)(1), *see, e.g., Dobronski v. Tobias & Assocs., Inc.*, No. 23-10331, 2024 WL

1174553, at *4–5 (E.D. Mich. Mar. 18, 2024) (collecting cases), and this Court is likewise disinclined to create one here.  Defendants are therefore also entitled to dismissal of Count 5.

*"Abandoned Calls"* **(Count 7).**  In Count 7, Plaintiff alleges that Calls 1 and 2 violated 47 C.F.R. § 64.1200(a)(7) as the calls were not connected to a live sales representative within two seconds of the called person's completed greeting (FAC ¶¶ 303–04).   In support of dismissal of Count 7, Defendants Cunha, Long, Adroit, and ABA argue that assuming a private cause of action exists, the regulation requires information related to the caller's "overall abandonment percentage" when making calls, "which Dahdah's [sic] complaint fails to mention" (ECF No. 29 at PageID.338–339; ECF No. 33 at PageID.386–387).

However, as Plaintiff accurately points out in response, the regulation has two subsections and establishes two separate standards: (1) the requirement that telemarketing calls be connected to a live representative within two seconds, 47 C.F.R. § 64.1200(a)(7)(*i*); and (2) the requirement that a telemarketer's abandoned call rate must not exceed three percent of answered calls within a 30-day period, *id.* § 1200a(a)(7)(*ii*) (ECF No. 51-1 at PageID.576; ECF No. 52-1 at PageID.652). The abandonment rate is relevant only to a claim based on call abandonment, not one, as here, alleging the delayed connection of calls.   Hence, Defendants Cunha and Long have not demonstrated that they are entitled to dismissal of Count 7 at this juncture.

**b.**    **State-Law Claims**

*Violations of the MHSSA & MTCCCA* **(Counts 9 & 10).**  In Counts 9 and 10, Plaintiff alleges that Defendants' abusive telemarketing practices likewise violated corresponding Michigan telemarketing laws (FAC ¶¶ 313–16, citing MICH. COMP. LAWS §§ 445.111a(5), 111b(1), and MICH. COMP. LAWS § 484.125(2)(a)).  In support of dismissal of Counts 9 and 10,

Defendants Cunha and Long merely reiterate their argument that the allegations do not specifically identify them as responsible for making any of the calls (ECF No. 29 at PageID.340).

In response, Plaintiff points out that she alleged that Defendants Cunha and Long violated Michigan's telemarketing laws by making *or directing* unlawful telephone solicitations to a residential number that was on the national Do-Not-Call Registry, failing to provide the required disclosures, and delivering prerecorded messages (ECF No. 51-1 at PageID.578–580).

"Under the MHSSA, a telephone solicitor is prohibited from making (1) a robocall to a 'residential telephone subscriber,' or (2) a telephone solicitation to a 'residential telephone subscriber' listed on the national do-not-call list." *Dobronski v. Transamerica Life Ins. Co.*, 13 N.W.3d 895, 902 (Mich. Ct. App. 2023) (citing MICH. COMP. LAWS § 445.111a(5)). The MTCCCA similarly "protects certain persons (called 'subscribers') from robocalls or calls made with disabled caller-ID." *Id.* (citing MICH. COMP. LAWS § 484.125). Defendants do not identify any differences between federal and Michigan agency law; therefore, for the reasons stated earlier, their argument does not entitle them to dismissal of Plaintiff's state-law claims in Counts 9 and 10.

***Violation of the MTCCCA* (Count 11).**  In Count 11, Plaintiff alleges that in violation of MICH. COMP. LAWS § 484.125(2)(b), Defendants activated a feature to block the display of caller identification information that would otherwise be available to the subscriber and "purchased or selected phone numbers in the 269-area code so that people would answer their calls" (FAC ¶¶ 318–26).  In support of dismissal of Count 11, Defendants Cunha, Long, Adroit, and ABA argue that Plaintiff's claim fails because Michigan's statute only applies to "intrastate commercial advertising" and there are no allegations that any calls attributable to Long or Cunha came from

within Michigan to Plaintiff in Michigan (ECF No. 29 at PageID.340–341; ECF No. 33 at PageID.387).

In response, Plaintiff contends that she sufficiently alleged that Defendants, including Long and Cunha, targeted a Michigan consumer using deceptive tactics such as using a Michigan phone number and falsely claiming to be Michigan-licensed insurance agents, tactics that were designed to create the appearance that they were operating within Michigan and engaged in '"intrastate" commerce (ECF No. 51-1 at PageID.580–582 & ECF No. 52-1 at PageID.653, citing FAC ¶¶ 191–97).

Plaintiff's argument is misplaced.  The MTCCCA defines "[i]ntrastate" as meaning "originating and delivering within this state."  MICH. COMP. LAWS § 484.125(c).  While the calls at issue in this case were allegedly delivered to a Michigan number, they did not "originate" within Michigan, as Plaintiff herself concedes.  The injury to which Michigan's statute is expressly directed is not the injury that Plaintiff describes in the First Amended Complaint.  In short, Defendants have demonstrated that they are entitled to dismissal of Count 11.

***Civil Stalking* (Count 15).**  In Count 15, Plaintiff alleges that Defendants' conduct constitutes civil stalking in violation of MICH. COMP. LAWS § 600.2954 (FAC ¶¶ 350–60).  In support of dismissal of Count 15, Defendants Cunha and Long argue that (1) there are not "two or more" instances of alleged harassment attributable to Cunha or Long; (2) the conduct attributable to Long and Cunha is not harassment as a matter of law; and (3) based on Plaintiff's admissions, there is no plausible way that Long or Cunha could have made Plaintiff feel "terrorized" as a matter of law (ECF No. 29 at PageID.343–348).  Defendants Adroit and ABA similarly argue that the claim should be dismissed where there are no "individualized allegations" against them (ECF No. 33 at PageID.386–387).

In response, Plaintiff argues that her state-law civil stalking claim should not be dismissed because (1) Defendants' investigation into Plaintiff's personal life and repeated telemarketing calls form a clear pattern of harassment under Michigan's stalking laws, and (2) Plaintiff's history of domestic violence amplified the psychological harm she suffered (ECF No. 51-1 at PageID.585–587; ECF No. 52-1 at PageID.653).

MICH. COMP. LAWS § 600.2954 provides that "a victim may bring a civil action against an individual who engages in conduct that is prohibited as stalking under Section 411h or 411i of the Michigan penal code[.]"  MICH. COMP. LAWS § 600.2954(1). "Stalking," in turn, is defined in the criminal statute as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." *Id.* § 750.411h(1)(d).  "Harassment," in turn, is defined as "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress." *Id.* § 411h(1)(c).  And "emotional distress" requires "significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." *Id.* § 411h(1)(b).  Taking Plaintiff's factual allegations in the light most favorable to her, Plaintiff has stated a plausible state-law civil stalking claim.  The factual allegations nudge these claims across the line from conceivable to plausible, even if barely.  Defendants' mere disagreement with the alleged facts does not entitle them to dismissal of Count 15.

***Violation of the FTSA* (Count 16).**  In Count 16, Plaintiff alleges that Defendants' telemarketing practices likewise violated corresponding Florida law (FAC ¶¶ 362–66, citing FLA.

STAT. § 501.59).  In support of dismissal of Count 16, Defendants Cunha and Long argue that Plaintiff's claim fails because (1) Plaintiff does not allege that either Cunha or Long made any calls themselves and (2) Plaintiff does not allege she was on Florida's Do-Not-Call Registry (ECF No. 29 at PageID.348–349).  Defendants Adroit and ABA similarly argue that the First Amended Complaint is devoid of any allegation that any calls attributable to Adroit, ABA, or an agent of Adroit or ABA came from within Florida to Plaintiff in Florida (ECF No. 33 at PageID.387–388).

In response, Plaintiff argues that (1) Florida courts recognize liability for those benefiting from telemarketing, even if they did not dial the phone; and (2) courts have found that registration on the national do-not-call registry can suffice for FTSA claims (ECF No. 51-1 at PageID.587–588; ECF No. 52-1 at PageID.654).

The FTSA defines "[t]elephone solicitor" to mean "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call, including, but not limited to, calls made by use of automated dialing or recorded message devices."  FLA. STAT. § 501.059(i).  The phrase "[d]oing business in this state," in turn, is defined to mean "businesses that conduct telephonic sales calls from a location in Florida or from other states or nations to consumers located in Florida."  Id. § 501.059(e).  While the calls at issue in this case may have originated from a location in Florida, they were not placed to "consumers located in Florida," as Plaintiff herself concedes.  The injury to which Florida's statute is expressly directed is not the injury that Plaintiff describes in the First Amended Complaint.  In short, Defendants have demonstrated that they are entitled to dismissal of Count 16.

      c.      **Common Law Claims**

      *Intrusion Upon Seclusion, Intentional Fraud/Misrepresentation, and Negligent Misrepresentation (Counts 12–14).*  In Count 12, Plaintiff alleges that Defendants intentionally interfered, physically or otherwise, with her solitude and seclusion by engaging in unlawful and intrusive communications (FAC ¶¶ 328–34).  In Counts 13 and 14, Plaintiff alleges that Defendants intended to defraud and induce her reliance by persuading her to answer her phone by falsely displaying caller ID from her hometown (*id.* ¶¶ 336–48).

      Defendants Cunha, Long, Adroit, and ABA cursorily argue that these three tort claims are duplicative of Plaintiff's TCPA and the Michigan statutory claims and "double recovery is not permitted for a single alleged wrong" (ECF No. 29 at PageID.341–342; ECF No. 33 at PageID.389–390).  They additionally argue that Plaintiff failed to sufficiently plead the elements of her intentional fraud/misrepresentation and negligent misrepresentation claims (ECF No. 29 at PageID.342–343; ECF No. 33 at PageID.390–392).

      In response, Plaintiff argues that the law allows for alternative pleading and that these claims address distinct harms not covered by the TCPA (ECF No. 51-1 at PageID.582–583; ECF No. 52-1 at PageID.656).  Plaintiff argues that she has adequately alleged the essential elements of fraud with sufficient particularity (ECF No. 51-1 at PageID.583–585; ECF No. 52-1 at PageID.656–657).

      Defendants have not demonstrated that they are entitled to dismissal of Plaintiff's tort claims in Counts 12, 13, and 14.  Pleading alternative bases of liability is expressly authorized under the Federal Rules of Civil Procedure.  FED. R. CIV. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").  *See also Reg'l Airport Auth. of*

*Louisville v. LFG, LLC*, 460 F.3d 697, 711 (6th Cir. 2006) ("Parties may, of course, plead alternative theories of liability.").

Nor have Defendants demonstrated that Plaintiff has not sufficiently pleaded her claims in Counts 13 and 14. Under Michigan law, the elements of fraud are: "(1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." *Hi-Way MotorCo. V. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976). Under Rule 9(b), fraud must be pleaded with particularity, requiring a plaintiff to: "(1) specify the fraudulent statements, (2) identify the speaker, (3) state when and where the statements were made, and (4) explain why they were fraudulent." FED. R. CIV. P. 9(b). Here, Plaintiff adequately alleges that Defendant Long claimed to be a licensed Michigan insurance agent during telemarketing calls on March 22 and 23, 2024, a claim that was falsely made to induce Plaintiff's trust and generate revenue. *See* FAC ¶¶ 148–203.

In short, Defendants' arguments do not entitle them to dismissal of Plaintiff's common-law claims at this juncture.

***"Civil Conspiracy"*** **(Count 8).** In Count 8, Plaintiff alleges that Defendants agreed amongst themselves to engage in a course of conduct that violated the TCPA and its corresponding regulations and were working together in concert to profit from the violations (FAC ¶¶ 306–11). In support of dismissal of Count 8, Defendants Cunha, Long, Adroit, and ABA argue that Plaintiff has alleged only a formulaic recitation of the elements of civil conspiracy claim and has not alleged that Cunha or Long knew of any agreement to violate the TCPA and has not alleged any actual damages (ECF No. 29 at PageID.339–340; ECF No. 33 at PageID.387–389).

In response, Plaintiff argues that her allegations about repeated noncompliance with do-not-disturb requests and other regulations coupled with the allegations about Defendants' attempt to retroactively immunize their illegal conduct through waivers in the proposed contract sufficiently demonstrate the intent and coordination necessary for plausibly stating a civil conspiracy claim (ECF No. 51-1 at PageID.577; ECF No. 52-1 at PageID.654–656).  Plaintiff also argues that statutory damages are sufficient to support a conspiracy claim because the TCPA violation itself causes harm, harm such as the privacy invasion and disruption alleged by Plaintiff (ECF No. 51-1 at PageID.577–578; ECF No. 52-1 at PageID.656).

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Green v. Pontiac Pub. Libr.*, No. 363459, ___ N.W.3d ___, 2024 WL 994950, at *8 (Mich. Ct. App. Mar. 7, 2024) (citation omitted).  "A plaintiff alleging a civil conspiracy must prove a separate, actionable tort as the basis of the conspiracy." *Id.* The Michigan Supreme Court has described a tort in this context as "a civil wrong that arises from the breach of a legal duty other than the breach of a contractual duty." *Id.* (citation omitted).  Taking the factual allegations in the light most favorable to her, Plaintiff's factual allegations state a plausible civil conspiracy claim.  While the predicate tort(s) may not be borne out by discovery, Defendants' argument does not entitle them to dismissal of Count 8 at this juncture.

**3.      Standing for Injunctive Relief**

In her prayer for relief, Plaintiff requests injunctive relief under the TCPA "aimed at ensuring the prevention of Defendants from violating the TCPA in the future" and including requiring Defendants to "to hire a Court-approved, independent auditing company to (a) investigate all allegations of TCPA violations, and (b) audit no less than 10% of Defendant Adroit,

Defendant American Business Association, Defendant Long, and Defendant Cunha and their agent/vendors/telemarketers Doe Defendants outbound calls—including calls originating from lead generators—to ensure that Defendants had consent and that the consumer had not previously asked that calls stop, and (c) report the results of the above investigations to the Court and Plaintiff's counsel on a quarterly basis for no less than five years" (FAC, Prayer for Relief, ¶¶ 10–11).

Defendants Cunha, Long, Adroit, and ABA argue that Plaintiff lacks standing for her requested injunctive relief because she has alleged only past conduct and does not allege an immediate threat of future harm (ECF No. 29 at PageID.349–351; ECF No. 33 at PageID.392–393). In response, Plaintiff argues that she has alleged a telemarketing scheme broader than the three-day period in March 2024, allegations that create a reasonable inference that future violations are likely unless restrained (ECF No. 51-1 at PageID.588–589; ECF No. 52-1 at PageID.658).

The TCPA provisions providing a private right of action to enforce its provisions contemplate the availability of monetary and injunctive relief. *See* 47 U.S.C. § 227(b)(3)(A)–(C) (providing for a private right of action to "enjoin such violation," recover money damages, or both) and *id.* § 227(c)(5)(A)–(C) (providing same relief). Here, Plaintiff alleges that while "the calls are not to the level that led her to file this suit," she is, "[t]o this day, …still getting calls and text messages trying to sell her insurance, and the contact will not stop" (FAC ¶¶ 100–101). Taken in in the light most favorable to her, Plaintiff's factual allegations plausibly state an immediate threat of future harm. Defendants have not demonstrated that her request for injunctive relief is amenable to dismissal under Rule 12.

4.      **Requests to Strike/Dismiss for Fraud**

Last, pursuant to Rule 12(f), Defendants Cunha, Long, Adroit, and ABA request that this
Court strike certain paragraphs of the First Amended Complaint referencing "autodialers,"
"robocalls," prior lawsuits brought against Adroit, and Plaintiff's "loss of pregnancy via stillbirth"
as immaterial and/or "extra noise" (ECF No. 29 at PageID.351–352; ECF No. 33 at PageID.393–
395).  Defendants Adroit and ABA additionally argue that the entire First Amended Complaint
must be dismissed as the "product of impermissible fraud on the court" (ECF No. 33 at
PageID.369, 373–377).  Defendants Adroit and ABA rely on the findings of their private
investigator to support their contention that Plaintiff and her counsel are "involved in a personal
and  intimate  relationship"  and  together  "sought  out"  the  alleged  phone  calls  and
telecommunications, "seeking to fabricate claims under federal and Michigan state laws in order
to collect from Defendants" (*id.* at PageID.375–376, citing 7/16/2024 Report [ECF No. 33-1]).

In response, Plaintiff asserts that while she did not specifically allege that Defendants
themselves used an autodialer, she reasonably believes one was used based on the character and
timing of the unsolicited calls (ECF No. 51-1 at PageID.589–590; ECF No. 52-1 at PageID.660).
Plaintiff explains that while she was in the hospital in 2021 for a miscarriage, her telephone number
was "spoofed," which has added to her emotional distress about the 2024 calls from Defendants
(ECF No. 52-1 at PageID.659, citing FAC ¶¶ 45–49).  Last, according to Plaintiff, the assertion by
Defendants Adroit and ABA that this case is based entirely on "manufactured" phone calls is a
baseless attempt to discredit both Plaintiff and her counsel and distract the Court from the
substance of the claims (ECF No. 52-1 at PageID.633).  Plaintiff's counsel indicates that his
relationship with Plaintiff predates the filing of this lawsuit, and he indicates that Plaintiff placed
return calls "to learn who was calling her" and assess "who to contact or sue" (*id.* at PageID.639–

644).  Plaintiff requests that this Court strike both the private investigator's report and Defendants' references to it (*id.* at PageID.627–632, 644).

The Court turns first to Defendants' request to strike certain paragraphs from the First Amended Complaint.  Rule 12(f) of the Federal Rules of Civil Procedure provides that a court "may strike from a pleading an insufficient defense or any redundant immaterial, impertinent, or scandalous matter."  FED. R. CIV. P. 12(f).  A motion under Rule 12(f) to strike a pleading must be filed before responding to the pleading.  FED. R. CIV. P. 12(f)(2).  Here, Defendants embed their request within their motions to dismiss.  In any event, the Court is disinclined to grant the request.  "Motions to strike are viewed with disfavor and are not frequently granted."  *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)).  "The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy."  *Brown & Williamson, supra.*  Upon review, the allegations Defendants challenge do not need to be stricken as lacking "any possible relation" to the controversy.

Turning next to the report of the private investigator, there is no question that the report is outside the scope of this Court's review under Rule 12(b)(6), and the Court declines to credit its findings in support of a dramatic dismissal.  *Cf. Perrong v. Victory Phones LLC*, 2021 WL 3007258, at *4 (E.D. Pa. July 15, 2021) ("The Court declines to give [defendants] a 'free pass' simply because they robo-dialed a caller aware of his rights under the TCPA.").  The Court also declines to strike the report from the record.  "Faced with matters outside the pleadings, district courts have 'complete discretion' to accept them (and treat the motion as one for summary judgment) or ignore them (and treat the motion as one to dismiss).  When a district court ignores such matters, nothing requires it to take the drastic step of striking them from the record."  *Caraway*

*v. CoreCivic of Tennessee, LLC*, 98 F.4th 679, 688 (6th Cir. 2024) (internal citations omitted).  *See also Fox v. Michigan State Police Dep't*, 173 F. App'x 372, 375 (6th Cir. 2006) (holding that matters not falling within the definition of "pleadings" are not subject to a motion to strike under Rule 12(f)).

In conclusion, Plaintiff's claims in Counts 4, 5, 11, and 16 are properly dismissed.  This case proceeds, with all requisite decorum, on the remaining dozen claims.  Specifically, the case proceeds on Plaintiff's five claims under the TCPA (Counts 1–3 & 6–7), three state-law claims (Counts 9, 10, & 15), and four common-law claims (Counts 8, 12, 13, & 14).

### III.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss (ECF Nos. 28 & 32) are GRANTED IN PART as to Counts 4, 5, 11, and 16, which are DISMISSED; the motions are otherwise DENIED.

**IT IS FURTHER ORDERED** that Defendants Adroit, ABA, Cunha, and Long shall file their Answer(s) to Plaintiff's First Amended Complaint (ECF No. 24) not later than 21 days after entry of this Opinion and Order.

Dated:  March 4, 2025                                              /s/ Jane M. Beckering
                                                                              JANE M. BECKERING
                                                                              United States District Judge